Greg D. MORRIS, Appellant (Plaintiff),

v.

Wayne KADRMAS and Shirley
Kadrmas, husband and wife,
Appellees (Defendants).

No. 91–7.

Supreme Court of Wyoming.

June 3, 1991.

Petition for Reconsideration or
Modification Denied June 27, 1991.

Micheal K. Shoumaker, Sheridan, for appellant.

Stuart S. Healy of Healy & Kinnaird, Sheridan, for appellees.

Before URBIGKIT, C.J., THOMAS, MACY and GOLDEN, JJ., and ROONEY, Retired Justice.

ROONEY, Justice, Retired.

Appellant brought this action against appellees requesting relief in the form of injunction and monetary damages for violations of the protective covenants on the Valley West Subdivision near Sheridan. The action was also against the Valley West Subdivision Land Owners Committee in the form of mandamus and declaratory judgment for failure to enforce the covenants. The district court dismissed the action against the Committee. Appellant appeals from a subsequent grant of appel-

lees' motion for summary judgment and denial of appellant's similar motion. Appellant owns lot 23 in the subdivision. Appellees own lot 24 therein.

We reverse and remand.

The issues presented by appellant in this appeal are whether or not appellees violated the protective covenants by placing a 60′ × 40′ garage and shop building on lot 24 without (1) an accompanying residential structure, (2) with only a 12–foot set back from the lot line, and (3) with a metal roof. There is no issue of fact in this case. Appellees acknowledge the erection of the 60′ × 40′ metal-roofed garage and shop building without accompanying residential structure, and with only a 12–foot set back from the lot line, but they contend that such was proper since it had Committee approval. They word the issues on appeal:

"A.  Did the District Court properly grant summary judgment to Appellees in view of the uncontroverted evidence that the Control Committee charged with the duty to approve construction and enforce the protective covenants of the subdivision did, in fact, review and approve the building plans and specifications submitted by Appellees in accordance with what the Committee perceived to be its delegated authority?

"B.  If not, does the failure of the Appellant to appeal from the 'Order of Dismissal' granted to the Control Committee nevertheless prevent him from perfecting this appeal?"

The Declaration of Protective Covenants, executed and recorded by the original owners of the land and developers of the subdivision, provided in pertinent part:

"Said conditions, restrictions, covenants and reservations are imposed upon said above described realty as an obligation or charge against the same for the benefit of each and every lot, tract and parcel therein contained and the owner or owners thereof, and with the right of enforcement vested in the owner or owners of any one or more of the other lots above described, and said conditions, restrictions, covenants and reservations will be imposed upon each and every lot in said above described real estate, and are as follows:

"(1) That said lots shall be used for residence purposes exclusively and only one residence shall be permitted on each lot and that no buildings or structures, other than one-family residences with the customary out buildings, including a private garage and one barn, shall be erected, maintained or permitted on any such lot.  * * *  No residence building thereon shall exceed one and one-half stories in height, except with prior approval of * * * the Control Committee * * *.  At the time 75% of the lots in the Subdivision shall have been sold and conveyed by the undersigned owners, the purchasers (owners) of said lots shall elect a Control Committee consisting of three (3) members who shall then replace the undersigned owners or their successors in interest as the approval authority for the provisions of these covenants.

\*      \*      \*      \*      \*      \*

"(2) That no residence or other allowable structure erected upon any of said lots shall be erected, maintained or located nearer than 25 feet to the front lot line, nor nearer than 25 feet to any side lot line, except with the prior approval of the approval authority.

\*      \*      \*      \*      \*      \*

"(4) * * * All pitched roofs shall have cedar shingles or shakes, except flat and low-pitched roofs may have natural gravel or shale roofs; exceptions: Sierra Forest Tone by Flintkote or as approved by the approval authority. * * *

\*      \*      \*      \*      \*      \*

"(12) The approval authority shall have the right to vary the limitations provided by these restrictions and covenants to the extent of 10% of the requirements, and shall have the right to enforce these covenants.

\*      \*      \*      \*      \*      \*

"(21) These covenants are to run with the land and shall be binding on all

parties and all persons claiming under them for a period of twenty-five (25) years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of ten (10) years unless an instrument signed by 75% of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part.

"(22) The approval authority shall have the sole and exclusive right and authority to determine compliance with the covenants contained herein and allocate and assess the costs for the improvements, maintenance and repair of all utilities and roadways. Upon the violation of any covenants or upon the failure to pay any assessments, written notice of such violation or failure shall be directed to the violator who shall have ten (10) days after receipt of said notice or after said notice should have been received in the ordinary course of mail, to correct the violation or pay the assessment due. If said violation is not corrected or payment is not made, owner or the approval authority may re-enter and take possession of the violator's premises and correct the violation at the violator's sole expense. In addition, damage may be assessed at the option of the owner or approval authority against the violator at the rate of $25.00 per day for each day the violation continues after the said 10–day notice. In the event suit is required to collect any sums due or enjoin the violation of any of the covenants contained herein, the violator, in addition to any of the other penalties provided herein or which may be assessed by the Court shall be liable for all attorney fees and costs incurred by the owner or approval authority in bringing such action."

We review a summary judgment in the same light as the district court, using the same materials and following the same standards. *Baros v. Wells*, 780 P.2d 341 (Wyo.1989).

## COMMITTEE APPROVAL

■ Appellees' contention that approval of the building plans and specifications by the Committee was sufficient authorization to disregard the covenants running with the land to the extent that the violations thereof were contained in such plans and specifications is incorrect. The Committee has no authority to vary the terms of the covenants other than as provided in the Declaration of Protective Covenants themselves.

Covenant No. 1 requires the existence of a residence for accompanying "customary out buildings." Authority is not given to the Committee to make an exception to this requirement. The only authority given to the Committee in the covenant to approve a variance is with reference to the requirement that no residence building shall exceed one and one-half stories in height. An effort by the Committee to approve a variance in the requirement that an outbuilding must have an accompanying residence is without legal force or effect. Appellees are in violation of this covenant. We held in *Sutherland v. Bock*, 688 P.2d 157 (Wyo. 1984) that, under a covenant such as this one, an outbuilding cannot be justified without the existence of a residential structure on the lot. The covenant is specific in providing that the only building or structure shall be a "one-family residence *with* customary out buildings." (Emphasis added.)

■ Covenant No. 2 provides that no structure "shall be erected, maintained or located * * * nearer than 25 feet to any side lot line" except "with the prior approval" of the Committee. However, the extent to which the Committee can exercise this approval is limited by Covenant No. 12 which allows a variance of the covenants "to the extent of 10% of the requirements." Accordingly, the Committee cannot authorize a set back of less than 22.5 feet. An effort by the Committee to approve a set back of 12 feet is without legal force or effect. Appellees are in violation of this covenant.

■ Covenant No. 4 requires all pitched roofs to have cedar shingles or shakes "or

as approved" by the Committee. Again, it may be said that Covenant No. 12 limits the extent to which the committee could exercise the approval. However, the application of Covenant No. 12 is obviously only to the limitations capable of being restricted in degree or in percentage. The limitation relating to the type of roof lacks this capability. The Committee did not exceed its authority in approving a metal roof on the building. Appellees suggest that Covenant No. 12 creates an ambiguity in the Declaration. There is no ambiguity under our holding that the obvious intent of the declarants was that the covenant applies only to the limitations capable of being restricted in degree or in percentage. If covenants number 12 creates a conflict or ambiguity in the covenants as suggested by appellees, the following reasoning used by us with reference to contract interpretation is applicable. We have held that a construction leading to a conclusion that a contract encompasses inconsistent provisions is to be avoided if that is reasonably possible, and provisions which apparently conflict must be reconciled, if such can be done by any reasonable interpretation, before a construction is adopted nullifying any provisions of that instrument. *See, e.g., Shepard v. Top Hat Land & Cattle Co.*, 560 P.2d 730 (Wyo.1977).

## PROPRIETY OF APPEAL

■ Appellees argue that "Appellant's quarrel, if any, is with the Control Committee for the action it took in approving the building plans and authorizing" the construction of the building in accordance therewith—although in violation of the covenants—and that appellant's failure to appeal the order dismissing his complaint against the Committee is "fatal" to this appeal. In effect, appellees contend that any error by the district court was in dismissing the complaint against the Committee and not with granting appellees' motion for summary judgment.

Such argument and contention is faulty for more than one reason. It is premised on the false assumption that appellant's injury could result only from the action of the Committee and not from the action of appellees or from the actions of both. Appellees recognized the correct potential by filing, as an alternative to the motion to dismiss, a third party complaint [1] for the purpose of making the Committee liable for any judgment against them in favor of appellant; but the summary judgment made it unnecessary to consider the issues resulting therefrom. The lack of authority in the Commission to approve the erection of the outbuilding without the previous, concurrent, or imminent erection of a residence, and the lack of its authority to vary the set back from the lot line to the extent it did makes pertinent consideration by the trial court of appellees' third party complaint, but it does not prevent appellant from pursuing a legal claim against appellees.

The introductory paragraph to the covenants recites that they are for the "benefit of each and every lot * * * and the owner or owners thereof, and with the right of enforcement vested in the owner or owners." Although Covenant No. 22 gives the Committee "sole and exclusive right and authority to determine compliance with the covenants," it also recognizes the legal right, among others, of the *owner* to "correct the violation at the violator's sole expense," and to hold the violator "liable for all attorney fees and costs incurred" in bringing an action to enjoin the violation of any of the covenants.

The motion of the Committee to dismiss appellees' claim recited as the basis for dismissal that "[p]ursuant to the Covenants, the right of enforcement is vested in the owner or owners of any one or more of the lots." The district court granted the Committee's motion to dismiss. In granting appellees' motion for summary judgment against appellant, the court did so upon the finding that "the Control Committee approved the building of the lot and that the land owners are stuck with what the Control Committee did." If the right

---

1. A third party complaint was filed rather than a crossclaim inasmuch as the trial court had previously granted the Committee's motion to dismiss.

of enforcement is vested in appellant, it is difficult to understand why he cannot use the right rather than being "stuck with" whatever action the Committee decides to take. The two holdings are inconsistent.

Additionally, an appeal can be taken only from a final order. W.R.C.P. 41(a)(2) states that a dismissal is without prejudice "unless otherwise specified in the order." There was no such specification in the order dismissing the Committee from the action. W.R.C.P. 54 provides in pertinent part:

> "(a) A judgment is the final determination of the rights of the parties in action. * * *

> "(b) * * * [W]hen multiple parties are involved, the court may direct the entry of a final judgment as to one (1) or more but fewer than all of the * * * parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

See *Wheatland Irrigation District v. Two–Bar Muleshoe Water Co.*, 431 P.2d 257 (Wyo.1967).

■■■ Appellees note that they spent money in erecting the building and indicate that estoppel may prevent action against them. However, they did not plead such as an affirmative defense. W.R.C.P. 8(c) provides: "In pleading to a preceding pleading, a party shall set forth affirmatively * * * estoppel, * * * waiver." Estoppel must be pleaded. *Prazma v.· Kaehne*, 768 P.2d 586 (Wyo.1989).[2]

■■■ Injunctive relief is available to appellant. A covenant can be enforced without regard to the amount of damages which would result from a breach and even if there is no substantial monetary damage. It is proper even in the absence of a showing of irreparable harm or uncompensable injury. *Dice v. Central Natrona County Improvement & Service District*, 684 P.2d 815 (Wyo.1989). The propriety of the injunctive relief here requested is also provided in the covenants. Covenant No. 1 states that no structure, other than a one-family residence with customary outbuildings, shall be "erected, *maintained*, or permitted on any such lot." (Emphasis added.) Covenant No. 2 states that no structure "erected on any of said lots shall be erected, *maintained*, or located nearer than 25 feet to any side lot line." (Emphasis added.) The introductory paragraph to the covenants provides that the right of enforcement of the covenants is vested in "the owner or owners of any one or more of the" lots, and that covenant number 22 provides for corrective action for violation of the covenants to be available to "the owner or approval authority."

## REMAND

Accordingly, we reverse the summary judgment entered in favor of appellees and direct a grant of appellant's motion for summary judgment and the issuance of an injunction directing appellees to cause the barn to be razed (1) unless construction of a residence is commenced within 30 days of the mandate herein, with completion within a reasonable time, *and* (2) unless the barn

---

**2.** The elements of estoppel may not here exist even if properly pleaded by appellees. In estoppel, the court can presume assent to an adverse right by one who has knowledge of relevant facts and acquiesces for an unreasonable length of time in asserting the right. *Marken v. Goodall*, 357 F.Supp. 317 (1972) *aff'd* 478 F.2d 1052 (D.Wyo.1973). Appellant lives in Ranchester. His lot in this subdivision is vacant. In his deposition, he testified that he purchased the lot on January 14, 1976 for $12,600, that he considered the transaction an investment which could be hurt by the -covenant violations of appellees, that he might want to trade the lot and that he might decide to build on it. He further testified that he gets "out there a couple of times a summer" and first saw the barn on

one of these trips in May of 1989, at which time the building was "almost completed," and that, within a week thereafter, he telephonically told appellee Wayne Kadrmas that he objected to the covenant violations. Appellant's attorney sent a notice letter to appellees on October 24, 1989, and this action was filed on February 12, 1990. Of interest is the deposition testimony of Gary Laughton, a member of the Committee, in which he said to appellee Wayne Kadrmas at the time Kadrmas was staking out the barn location that the set back "had to be twenty-five feet. I said that is what the covenants said it had to be." Kadrmas responded, "I have equipment coming in and I have staked it out and this is about where it has to be built."

is moved within 30 days of the mandate herein to comply with the ten percent requirement of Covenant No. 2. Since our reversal makes pertinent the issues presented in appellees' proposed third party complaint, we direct the grant of (1) appellees' motion for leave to file the same, and (2) the conduct of the usual resulting proceedings.

Reversed and remanded.