**Wayne KADRMAS and Shirley Kadrmas, Husband and Wife, Appellants (Plaintiffs),**

v.

**VALLEY WEST HOMEOWNER'S ASSOCIATION, Appellee (Defendant).**

**No. 92–169.**

Supreme Court of Wyoming.

March 18, 1993.

Stuart S. Healy, Sheridan, for appellants.

H.W. Rasmussen and Bruce P. Badley of Badley & Rasmussen, Sheridan, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

CARDINE, Justice.

Appellants, Wayne Kadrmas and Shirley Kadrmas, brought this negligence action against Valley West Homeowner's Association (VWHO), appellees, to recover damages resulting from violation of protective covenants. Following a one-day trial, the district court entered judgment in favor of VWHO. Kadrmas appeals from the district court's judgment.

We affirm.

The issues presented for determination as stated by appellant are:

A. Whether the District Court incorrectly decided this case on the basis of first-party negligence and comparative negligence to the exclusion of third-party contribution, indemnity and estoppel.

B. If the case was properly resolved on principles of negligence, whether the District Court failed to allocate and apply the proper burdens of proof[,]

and as stated by appellee are:

A. Does the record support the judgment of the District Court?

B. Appellants failed to present any issues which warrant reversal.

C. Is Appellee entitled to attorney fees for enforcement of the covenants?

## FACTS

Kadrmas owned a 3.4 acre lot in the Valley West Subdivision on which he constructed a barn in violation of protective covenants. An adjoining landowner, Morris, sued to enforce the covenants. Kadrmas asserted a third party complaint against VWHO. On appeal, summary judgment in favor of Kadrmas and against Morris was reversed, *Morris v. Kadrmas*, 812 P.2d 549 (Wyo.1991), with this court requiring strict compliance with the 25–foot setback and residence requirements and further holding that Kadrmas be allowed to file his complaint and pursue his damage claim against VWHO.

Kadrmas settled and paid Morris' claim upon Kadrmas', Morris' and VWHO's stipulation of damages in the amount of $2,000.00. In this case, Kadrmas seeks contribution from VWHO for its percentage share of the negligence causing damage of $2,000.00 to Morris and its percentage share of negligence causing damage incurred by Kadrmas in the cost and expense of razing and moving the barn.

In a trial to the court, Kadrmas testified that a plan showing a 12–foot setback from the lot line had been approved by VWHO and that he did not recall a member of the VWHO control committee warning him of the need to comply with the 25–foot setback requirement. Members of the committee testified that the plan with the 12–foot setback had not been approved, that the 25–foot requirement had been noted on the plan before construction began, and that committee member Laughton had specifically advised Kadrmas of the need to comply with the setback requirement before construction.

The trial court, in its decision denying Kadrmas recovery, stated:

My view is that the committee does have an obligation to review these plans and specifications, and they do have an obligation to notify the owner, the builder of, you know, whether they approve them or not. And if that builder, the owner, relies upon that to his detriment, I think they would be liable. * * *

\* \* \* \* \* \*

* * * They said, okay. Go ahead and build it. Then there was this space of time. Mr. Kadrmas had a right to rely upon that.

I think that the crux of this case comes down to whether Mr. Kadrmas was warned that there might be a problem with the setback, whether there was or not, and Laughton said, I did warn him. Kadrmas says, you know, if you did, I've forgotten it.

\* \* \* \* \* \*

If that conversation really didn't take place, I think he should recover. If the conversation took place, he shouldn't recover. *He has the burden.* Based upon the testimony, I can't decide one way or the other, so I have to just find that I can't—I can't find in his favor *because the Kadrmases have that burden.* I'm just kind of in the middle, so that's the decision of the Court. [emphasis added]

The court concluded:

[The conversation] might not have happened, but the problem is, I can't decide that. I'm stuck right here. *The scales of justice are balanced evenly.* [emphasis added]

◼ Kadrmas argues that the effect of the above explanation by the court of its decision is that each party was found 50 percent at fault with the result that Kadrmas should recover 50 percent of his payment to Morris by contribution (equitable indemnity) and 50 percent of his damage for razing and moving the barn. We do not agree that the effect of the court's stated reasons for its decision equates to a finding of 50 percent negligence on each party.

◼ The trial court correctly stated that Kadrmas had the burden of proving that VWHO was negligent before it could be liable in damage. *Pine Creek Canal No. 1 v. Stadler*, 685 P.2d 13, 16 (Wyo.1984). We believe that the court saw this case as one in which it would find that the committee approved the plan and authorized violation of the covenants, or one in which there was no approval and authorization, in which event VWHO would be zero percent negligent and Kadrmas would recover nothing. If the state of the evidence was such that the court could not find that Kadrmas satisfied his burden of proving that VWHO approved the 12–foot setback and authorized construction of the barn in violation of the covenants, then it must find that VWHO was not negligent in any degree.

◼ The standard for reviewing the sufficiency of the evidence is well established. On review, this court assumes that the evidence in favor of the successful party is true. *Richardson v. Schaub*, 796 P.2d 1304, 1309 (Wyo.1990). We leave out of consideration entirely the evidence presented by the unsuccessful party that conflicts with the evidence of the successful party, and we afford to the evidence of the successful party every favorable inference that may be reasonably and fairly drawn from it. *Richardson*, 796 P.2d at 1310; *DeJulio v. Foster*, 715 P.2d 182, 185 (Wyo. 1986).

◼ The trial court held Kadrmas had not proved that VWHO authorized the deviations from the covenants. Substantial evidence supported the trial court's decision, and that decision must be sustained. Appellants have presented no cogent argument for reversal. The following excerpts from the testimony at trial illustrate the ambiguity surrounding the question whether VWHO approved Kadrmas' plans. Mr. Kadrmas testified:

THE COURT: There's a couple of questions I missed. You testified a few minutes ago, as I understood it, that there was a conversation you had with Mr. Laughton and some of the other people that came by and looked at your barn?

THE WITNESS: That's correct.

THE COURT: When did that conversation take place?

THE WITNESS: Those conversations, sir, took place during the construction process.

THE COURT: And that would have been after you had already squared it up and set the poles?

THE WITNESS: Yes.

Mr. Laughton testified:

Q. What was the next thing you recall in regard to the Kadrmas' building?

A. No. After, I'd say, two or three months, the building was—there was stakes out in the lot, and the day that they started to drill the holes for the, I think it was the pole building, why, I went over there just to check. And from my—from my home over to this lot, there's quite a few trees in the Hanes' residence in a fairly large house. I was not able to see that, but when they started with the equipment, it was either a Kiewit Construction or a Kiewit mining tan and natural truck there. And they were working real close to the property line.

Anyway, I went over there and I did look. It seems to me it was fairly close, and I had a tape measure. I went with the tape measure over there, and I measured out to one of the stakes on, it would be the—well, north and a little bit east, but mainly the north border, and it was—to my recollection, it was between—it was between 12 and 13 feet from the property line, at least from the fence there.

Q. After making that measurement, what did you do?

A. Well, I just discussed it with Mr. Kadrmas that, you know, the covenants said it had to be 25 feet minimum.

As noted above, we accept the successful party's evidence as true and afford to that evidence every favorable inference that may be reasonably and fairly drawn from it. We find the evidence presented sufficient to support the trial court's decision that appellants failed to satisfy their burden of proving appellee's negligence.

Appellee asserted a counterclaim which it wished preserved in the event of remand. The trial court found the counterclaim to be without substance, and we do also. Since there is no remand, we will not pursue the counterclaim further.

Affirmed.