2006 WY 19

**Karen D. RODENBOUGH, f/k/a Karen D. Miller, Appellant (Petitioner),**

v.

**Matthew B. MILLER, Appellee (Respondent).**

**No. 05–94.**

Supreme Court of Wyoming.

Feb. 2, 2006.

Representing Appellant:   James K. Lubing of James K. Lubing Law Office, Jackson, Wyoming.

Representing Appellee:   Jill Dean LaRance of LaRance & Syth, P.C., Billings, Montana.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

HILL, Chief Justice.

[¶ 1]   Appellant, Karen D. Rodenbough, f/k/a Karen D. Miller (Mother), challenges

the district court's order that denied her petition to modify child support. The district court concluded that Mother had failed to prove the existence of a change of circumstances, i.e., Mother did not present facts to establish a 20% or more increase in child support over that established in the existing order. Appellee, Matthew B. Miller (Father), contends that the district court's denial of Mother's petition was within its discretion. We reverse and remand for further proceedings consistent with this opinion.

## ISSUE

[¶ 2] Mother poses this issue:

Did the district court abuse its discretion when it determined that a substantial change of circumstances warranting a modification of child support did not exist when it did not examine [Father's] cash flow, ability to pay, and total financial situation?

In response, Father simply contends that the district court did not abuse its discretion.

## FACTS AND PROCEEDINGS

[¶ 3] On December 10, 2003, Mother filed a Notice of Filing Foreign Judgment in the district court and caused it to be served on Father. On that same date, Mother's attorney also filed an affidavit concerning the filing of the foreign judgment, a copy of which was sent to Father. Attached to the Notice was a copy of the Decree of Dissolution of Marriage entered on November 18, 1991, in the Montana Fifteenth Judicial District Court, Roosevelt County. The decree noted that the parties had two children (born March 15, 1988 and January 10, 1991), provided for joint custody of the children in accordance with the parties' wishes, and set child support at $125.00 a month per child, payable from Father to Mother. Also at-

tached to the Notice were the following: A July 2, 1993 modification of the decree, indicating the court did not have enough information before it to consider child support; a January 20, 1994 modification, indicating that the parties stipulated to child support in the amount of $250.00 per month per child,[1] a June 22, 1998 Order Modifying Decree and Adopting Stipulations (the stipulations are not included in the record); and a December 6, 1999 order which noted that venue was moved to Phillips County (Seventeenth District) in 1997, by consent of the parties, and which modified the existing parenting plan. That last order from the Montana court noted that Mother had moved to Wyoming.[2] With respect to child support it provided:

By March 1, 2000, parties shall exchange tax returns for the last two calendar years and financial affidavits for calculation of current child support obligation. By March 1st of each year thereafter, parties shall exchange tax returns for the past calendar year with updated financial affidavits. Either party may seek modification of support obligation based on these documents and modification of the parenting plan as stated herein.

So far as the record shows, this provision was not followed by the parties during the time period 2000 through 2004.

[¶ 4] On January 22, 2004, Mother filed a petition in the Wyoming district court, to modify the Montana decree. It was served on Father on January 26, 2004. Mother asked to modify the visitation provisions of the decree, as well as child support. By order entered on January 23, 2004, the district court ordered each party to file a Verified Financial Affidavit on or before February 20, 2004. Mother filed such an affidavit on February 17, 2004. By order entered on February 27, 2004, the district court extend-

---

1. The parties appear to agree throughout these proceedings that Father was paying $400.00 a month in child support (i.e., $200.00 a month per child). The record is not clear as to how that amount was determined. Our reading of the record indicates that the governing order of the Montana district court set child support at $250.00 a month per child, for a total of $500.00 a month, although it is also apparent that the record may be incomplete in this regard.

2. The record is not entirely clear in this respect but several years prior to moving from Montana to Wyoming, Mother remarried and had a third child. Father also remarried and now has three other children in addition to those at issue in the instant case.

ed Father's time to file a financial affidavit until March 15, 2004.

[¶ 5] On March 19, 2004, Father filed an answer to Mother's petition, which included a challenge to the jurisdiction of the Wyoming court. On that same date, Father filed a motion to dismiss the petition based on jurisdiction. The jurisdictional question was eventually resolved in favor of the Wyoming court exercising jurisdiction, although the record does not fully reflect those proceedings.

[¶ 6] On April 12, 2004, Father filed an affidavit in response to Mother's petition which was largely devoted to the issue of visitation. On August 16, 2004, Father filed a financial affidavit indicating he earned $5,400.00 per year, and lost an undisclosed sum of money on a "self-employed" venture. He also included 2002 and 2003 tax returns that he jointly filed with his new wife. By the time the dust had settled, and after several revisions of his financial circumstances, Father conceded that his monthly income (for purposes of the child support calculation) was at least $1,852.12. In his testimony to the district court, Father was evasive and short on "straight answers," but he did concede that as of January 26, 2004, his total assets amounted to $2,474,599.00, and his net worth was $1,713,498.00.

[¶ 7] At the hearing into this matter, the district court heard testimony from the parties and received a significant amount of documentary evidence.

## STANDARD OF REVIEW

[¶ 8] Of course, the keystone of our process of review when child support is the issue is abuse of discretion:

A district court has broad discretion in determining the correct amount of a child support award. This Court will disturb a district court's ruling only upon a showing that the district court abused its discretion. *Jordan v. Brackin*, 992 P.2d 1096, 1098 (Wyo.1999). We have stated that: "'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound

judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.'" *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998) (*quoting Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)).

*Watson v. Watson*, 2002 WY 180, ¶ 4, 60 P.3d 124, 125 (Wyo.2002); *also see Groenstein v. Groenstein*, 2005 WY 6, ¶ 10, 104 P.3d 765, 768–69 (Wyo.2005).

[¶ 9] In *Steele v. Steele*, 2005 WY 33, ¶¶ 10–12, 108 P.3d 844, 848–49 (Wyo.2005) we noted that the district court's discretion is limited in very significant ways by the statutes governing this process (and enacted by the legislature largely for the purpose of ensuring that the best interests of the affected children are at the center of this difficult process):

The applicable standard of review is well known and we will not repeat it in detail here. *See Ready v. Ready*, 2003 WY 121, ¶ 11, 76 P.3d 836, ¶ 11 (Wyo.2003). However, with respect to the issue at hand we include this refinement of the more general standard:

The child support guidelines identify a base from which the judge must invoke the exercise of discretion. In the absence of an agreement with respect to child support, the guidelines will have a more significant controlling impact. When an agreement as to child support is involved, however, more weight may be given to the agreement. Child support agreements entered into by the parties are favored by the courts.[3]

*Smith v. Smith*, 895 P.2d 37, 41 (Wyo. 1995); *also see Sharpe v. Sharpe*, 902 P.2d 210 (Wyo.1995); and *Wright v. Wright*, 5 P.3d 61, 62–63 (Wyo.2000).

We also have noted "... the child support guidelines manifest a presumption that the typical welfare and needs of children will be met by the minimum child support levels given the earning ability of the parent." *Madison v. Madison*, 859 P.2d 1276, 1279 (Wyo.1993). Further, we have opined:

---

3. Here, the record does not reflect the existence      of such an agreement.

A trial court should give serious consideration to the support guidelines. However, strictly following the guidelines blindly would nullify the court's traditional discretion and would not be in the interest of justice in all circumstances. The guidelines set out in the statute were not crafted to give any special protection or advantage to a parent owing support. Guidelines are just that—guidelines, and do not accommodate to all circumstances or cases. As a matter of policy, we are hesitant to impinge on the trial court's historic discretion.

*Holtz v. State ex rel. Houston*, 847 P.2d 972 (Wyo.1993).

The inescapable conclusion, however, is that the presumptive support table set out in Wyo. Stat. Ann. § 20–2–304(a) (Lexis-Nexis 2003) does have the effect of circumscribing the trial court's discretion in calculating child support awards.

[¶ 10] There are several statutes that play an important role in reaching a decision such as that at issue here. Unfortunately, it is not altogether clear that the parties or the district court were focused upon the applicable, much less the correct mix, of statutes. In particular, Mother relied on statutes that were amended and renumbered in 2000, but with changes that are of significance to this case. For instance, former Wyo. Stat. Ann. § 20–6–306(a), which is the centerpiece of the argument in Mother's brief, is now found at Wyo. Stat. Ann. § 20–2–311 (LexisNexis 2003 and 2005).[4] It provides:

### § 20–2–311. Adjustment of child support orders

(a) *Any party*, or the department of family services in the case of child support orders being enforced by the department, *may petition for a review and adjustment of any child support order that was entered more than six (6) months prior to the petition or which has not been adjusted within six (6) months from the date of filing of the petition for review and adjustment.* The petition shall allege that, in applying the presumptive child support established by this article, the *support amount will change by twenty percent (20%) or more* per month from the amount of the existing order. The court shall require the parents to complete a verified financial statement on forms approved by the Wyoming supreme court, and shall apply the presumptive child support set out in this article in conducting the review and adjustment. *If, upon applying the presumptive child support to the circumstances of the parents or child at the time of the review, the court finds that the support amount would change by twenty percent (20%) or more per month from the amount of the existing order, the court shall consider there to be a change of circumstances sufficient to justify the modification of the support order.* The provisions of this section do not preclude a party or assignee from bringing an action for modification of a support order, based upon a substantial change of circumstances, at any time. **Every three (3) years, upon the request of either parent or, if there is a current assignment of support rights in effect, upon the request of the department, the court, with respect to a support order being enforced under this article and taking into account the best interests of the child involved, shall review and, if appropriate, adjust the order in accordance with the guidelines established pursuant to this article. Any adjustment under the three (3) year cycle shall be made without a requirement for a showing of a change in circumstances.** The commencement of aid under the personal opportunities with employment responsibilities (POWER) program, medical benefits under Title XIX of the Social Security Act, food stamps and supplemental security income (SSI) shall be considered a substantial change of circumstances requiring modification of child support. [Emphases added.]

[¶ 11] The amount of child support owed by a parent is calculated by examining each parent's "income" and, thereafter determin-

---

4. The district court did not make any statutory references in its findings and, thus, it is difficult for this Court to ascertain on review whether the district court did consider the correct statute(s).

ing that parent's "net income." Wyo. Stat. Ann. § 20–2–304 (LexisNexis 2003 and 2005). The statutory definition of "income" is found in Wyo. Stat. Ann § 20–2–303(a)(ii) (LexisNexis 2003 and 2005):

(ii) "Income" means any form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor, temporary total disability, permanent partial disability and permanent total disability worker's compensation payments, unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any payor, but shall not include any earnings derived from overtime work unless the court, after considering all overtime earnings derived in the preceding twenty-four (24) month period, determines the overtime earnings can reasonably be expected to continue on a consistent basis. In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted. Means tested sources of income such as Pell grants, aid under the personal opportunities with employment responsibilities (POWER) program, food stamps and supplemental security income (SSI) shall not be considered as income. Gross income also means potential income of parents who are voluntarily unemployed or underemployed.

[¶ 12] "Net income," is used in calculating child support. It is defined by Wyo. Stat. Ann. § 20–2–303(a)(iii) (LexisNexis 2003 and 2005):

(iii) "Net income" means income as defined in paragraph (ii) of this subsection less personal income taxes, social security deductions, cost of dependent health care coverage for all dependent children, actual payments being made under preexisting support orders for current support of other children, other court-ordered support obligations currently being paid and mandatory pension deductions. Payments towards child support arrearage shall not be deducted to arrive at net income;

[¶ 13] The definition of income is quite important in this case because Father assert-

ed that, while he may have a high net worth and very significant assets, he did not have much income for federal income tax purposes (and presumably for Montana income taxes as well). The record contains Father's income tax returns and they support Father's view in this regard, although those returns may not bear the strain of a close audit. For instance, Father paid his sons when they worked for him during their summer visitation. Over the years 2001–2003, Father deducted the sums paid to them (over $12,000), although those checks were immediately endorsed by Father or stepmother and deposited into one of Father's bank accounts. Father asserted that the two children at issue, therefore, had that much money "in the bank." However, Father had received both the benefit of the deduction for tax purposes, and the money itself.

[¶ 14] Essential elements in the district court's sound exercise of its discretion are reliable and accurate financial affidavits and disclosures by the parents. To that end, Wyo. Stat. Ann. § 20–2–308 (LexisNexis 2003 and 2005) provides:

§ 20–2–308. Financial affidavits required; financial reporting.

(a) No order establishing or modifying a child support obligation shall be entered unless financial affidavits on a form approved by the Wyoming supreme court which fully discloses the financial status of the parties have been filed, or the court has held a hearing and testimony has been received.

(b) Financial affidavits of the parties shall be supported with documentation of both current and past earnings. Suitable documentation of current earnings includes but is not limited to pay stubs, employer statements, or receipts and expenses if self-employed. Documentation of current earnings shall be supplemented with copies of the most recent tax return to provide verification of earnings over a longer period.

(c) The court may require, or the parents may agree, to exchange financial and other appropriate information once a year or less often, by regular mail, for the pur-

pose of analyzing the propriety of modification of court ordered child support.

(d) All financial affidavits and records required by law to be attached to the affidavit shall constitute a confidential file and are subject to inspection by persons other than the parties, their attorneys or the department of family services to the extent necessary to enforce the Child Support Enforcement Act and the Uniform Interstate Family Support Act only by court order.

[¶ 15] In *Watson,* ¶¶ 16–17, 60 P.3d at 128–29, we said:

> We reiterate what we said in both *Fleenor* and *Houston:* the focus should be upon the reasonable and legitimate nature of the expense and its impact on the party's actual cash flow in the year in question rather than the treatment of the expense by federal law in the context of income taxes. The rationale of *Houston* was that book depreciation does not reduce actual net income. *Houston [v. Smith]*, 882 P.2d [240] at 244 [(Wyo.1994)]. The rationale of *Roseman* was that the child support payor had failed to prove that the amounts he claimed were reasonable business expenses. *Roseman [v. Sackett]*, 979 P.2d [940] at 943 [(Wyo.1999)]. The rationale of *Fleenor* was that, after the payor established that the expenses were reasonable expenses that directly affected business cash flow and his own disposable income, the payee failed to prove that the payments were unreasonable. *Fleenor [v. Fleenor]*, 992 P.2d [1065] at 1070 [(Wyo. 1999)]. That is the type of analysis required in cases of this nature. A central question in that analysis is whether the questioned expenses were unreasonably excessive or the assets were acquired to depress income to avoid support payments. *Id.* at 1069. The burden of proving that an expense was a reasonable unreimbursed legitimate business expense lies with the party seeking the deduction. *Erhart v. Evans*, 2001 WY 79, ¶ 15, 30 P.3d 542, 546 (Wyo.2001); *Fountain v. Mitros*, 968 P.2d 934, 938 (Wyo.1998).

One court has commented that "were we not to treat Section 179 deductions as de-preciation pursuant to the Nebraska Child Support Guidelines, a self-employed parent could distort his or her income in any given year by purchasing depreciable property and deducting the cost pursuant to Section 179, thereby reducing income available for child support." *Gammel v. Gammel,* 259 Neb. 738, 612 N.W.2d 207, 212 (2000). That, of course, is true; a scheming non-custodial parent could seek to manipulate his or her income in such a manner. But the opposite is also true; if in computing child support, a court automatically rejects a business expense that has been afforded Section 179 treatment, that court has not fulfilled its obligation under Wyo. Stat. Ann. § 20–2–303(a)(ii) to determine whether the amount should be deducted as a reasonable and legitimate business expense. Either course is wrong. The proper course is to make the statutory determination.

### DISCUSSION

[¶ 16] As we noted above, a significant problem in this case is that we are not certain whether the parties and the district court were on the right page of the right statutes. It does not appear that Father's income was calculated in the manner required by the governing statutes and applicable case law. It appears, as well, that perhaps too much income was attributed to Mother, given the undisputed evidence as to her actual earnings, as well as the lack of evidence that she was "voluntarily unemployed or underemployed."

[¶ 17] In its order denying any relief to Mother, the district court adopted these findings, which are especially pertinent to our resolution of this appeal.

1. The district court recognized the only basis for a modification of child support was if the presumptive support amount would change by at least 20%. Based on the record extant, it appears that child support has not been reconsidered by any court since 1999, and, therefore, this is not a correct statement of the law extant.

2. The district court attributed income in the amount of $1,891.34 to Mother. This was

based on Mother having earned that amount at one time in her life and that she was not employed *full-time* at the time of the hearing. Mother lived at a remote ranch location, had one of the parties' children at home being home-schooled, cared for both of the parties' children, and also cared for a child she had with her new husband. The district court did not credit any of these factual assertions made by Mother, even though they were not disputed by Father. The record will not support the district court's finding in this regard, indeed, it is contrary to the great weight of the evidence.

3. The district court accepted that child support had last been calculated by the Montana court in 1999 in the amount of a total of $400.00 for the two children. The district court mentions the sources of Father's income and recognized that "all reasonable unreimbursed legitimate business expenses shall be deducted." No detailed findings were made in this regard.

4. The district court found that Mother had not challenged Father's reasonable business expenses, and that Father's tax returns "reflect his accurate income figures." These findings simply are not supported by the record, and the district court makes no mention of the factual basis on which it relies for these conclusions. The record reflects that Mother challenged many of Father's deductions, exemptions, credits, etc. We do not intend to suggest that Mother's challenges were all correct, but based on the district court's conclusory findings, we cannot conclude that the required analysis (as described more fully above) has been done.

5. The district court set Father's net monthly income at $1,852.12 ("this figure is derived by estimating [Montana income] taxes [5] at 20% and adding to [Father's] income his employment benefits"). In reaching this conclusion, the district court purported to rely in part upon the fact that Father's stated income was more than the average farmer in Montana makes, per Montana State Wage Statistics. Although that piece of evidence is not included in the record on appeal, we are not able to discern how it could possibly be

relevant to determining Father's actual income for the purposes at hand. The district court's findings with respect to Father's actual income are inadequate given Father's lack of credibility and his professed inability to place anything resembling an accurate figure on what his actual income, as defined by statute, was. Although credibility is almost entirely a matter in the district court's discretion, in these circumstances the district court's findings with respect to credibility are either entirely lacking or inadequate given the state of the record on appeal.

6. The district court then used the presumptive child support tables to ascertain that Father's child support obligation was $470.00, and that that did not amount to a 20% change. Therefore, the district court denied any modification of child support. The calculation would have had to come to $480.00 for there to be a 20% change. Thus, even a relatively minor upward adjustment to Father's income, or a relatively minor downward adjustment to Mother's income, would result in the necessary 20% figure. Of course, as noted above, the 20% change rule may not be applicable in any event.

### CONCLUSION

[¶ 18] Given the facts and circumstances detailed above, we are compelled to conclude that the district court's findings of fact and conclusions of law are not supported by the record. Indeed they are contrary to the great weight of the evidence. The district court's conclusions are not drawn from objective criteria, and it did not exercise sound judgment with regard to what is correct under the circumstances and did so arbitrarily and capriciously. For these reasons, the order of the district court is reversed with respect to its determinations of child support, and the case is remanded to the district court with instructions that the matter of child support be reconsidered in a manner consistent with this opinion.

---

**5.** Father did not include any Montana income tax information with his financial affidavit. There is no basis in the record for estimating his

Montana income tax at 20% of his "income" for child support purposes, because he did not have that much income for income tax purposes.