2006 WY 45

**The BOARD OF COUNTY COMMISSIONERS OF TETON COUNTY, WYOMING, Appellant (Plaintiff),**

v.

**Thomas L. CROW and Carol–Ann G. Crow; James E. Moeller and Southpac Trust International, Inc., Trustees of the TLC/CGC Trust; and Jeffrey S. Overton, Appellees (Defendants).**

Nos. 05–111, 05–112.

Supreme Court of Wyoming.

April 13, 2006.

Representing Appellant: James L. Radda, Deputy County Attorney, Jackson, Wyoming.

Representing Appellees: Bradford S. Mead and Katherine L. Mead of Mead & Mead, Jackson, Wyoming, and Tim Newcomb of Grant & Newcomb, Laramie, Wyoming. Argument by Ms. Mead.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

HILL, Chief Justice.

[¶ 1] Appellant, the Board of County Commissioners of Teton County (Teton County), challenges the district court's Findings of Fact, Conclusions of Law and Judgment with respect to the punishment imposed in this case that involves Appellee's, Thomas L. Crow's (Crow), violation of Teton County's Land Development Regulations (LDR or LDRs).

[¶ 2] In earlier proceedings, the district court determined that Section 2450 of Teton County's LDRs, as it was applied to the circumstances of this case, violated Crow's substantive due process rights. Section 2450 limited the maximum square footage allowed in Crow's residence. After the residence was constructed in a manner that complied with Teton County's LDRs and an occupancy permit issued, Crow remodeled and enlarged the newly built home in such a manner so as to violate Section 2450. In addition, he did not acquire the permit required by Teton County LDR 1320 prior to having the remodeling and expansion work done. We did not agree with the district court's conclusion that the LDRs at issue here violated Crow's substantive due process rights, and we reversed and remanded this case to the district court for additional proceedings. *Board of County Commissioners of Teton County v. Crow,* 2003 WY 40, 65 P.3d 720 (Wyo.2003) (*Crow I* ).

[¶ 3] After further proceedings on remand, the district court found generally in favor of Teton County and imposed the following fines on Crow:

1. The Court orders that [Crow] ... pay a fine in the amount of $750.00 per day, for developing without a permit in violation of Section 1320 of the Land Development Regulations, for the time period February 1, 1999 through September 30, 1999, for a total of 242 days, for an aggregate fine for said violation in the amount of $181,500.00.

. . . .

3. The Court orders that [Crow] ... pay a fine in the amount of $750.00 per day, for violating Section 2450 of the Land

Development Regulations, pertaining to habitable space in excess of 8,000 square feet and total floor area in excess of 10,000 square feet, for the time period October 1, 1999 through May 3, 2004, for a total of 242 days, for an aggregate fine for said violation in the amount of $181,500.00.[1]

[¶ 4] The district court did not order abatement (i.e., the removal) of the excess square footage in the Crow's home as requested by Teton County.

## ISSUES

[¶ 5] Teton County raises these issues:

1. Given the intentional and substantial nature of Crow's violation of Section 2450 of Teton County's Land Development Regulations, did the district court err in not ordering the abatement requested by the County in an enforcement action brought pursuant to Wyo. Stat. Ann. § 18–5–205?

2. Given the intentional and substantial nature of Crow's violation of section 2450 of Teton County's Land Development Regulations, did the district court abuse its limited discretion in not ordering the abatement requested by the County in an enforcement action brought pursuant to Wyo. Stat. Ann. § 18–5–205?

3. Was the district court's findings that the parties had agreed and stipulated that the applicable period for the imposition of any fines was from February 15, 1999 to September 15, 1999 inclusive, clearly erroneous?

4. Did the district court err, in both the original Judgment and the Corrected and Amended Judgment, in not imposing a fine against Crow for each day's continuation of his violation of Section 2450?

Crow poses these as the applicable issues:

I. Should this Court divest the district court in this and every other abatement case of its traditional prerogative in fashioning and enforcing an equitable remedy?

II. Should this Court substitute its judgment about an appropriate remedy for that of the district court that was the finder of fact and arbiter of law?

III. Should this Court substitute its judgment for that of the district court—made and then reiterated—about the appropriate fine for a violation of County regulations?

## FACTS AND PROCEEDINGS

[¶ 6] For purposes of general background, as well as context for our further discussion of the issues, we iterate the facts set out in *Crow I:*

On March 21, 1995, Crow appeared through counsel at a meeting of the Teton County Board of County Commissioners and requested permission to construct a house with 12,000 square feet of habitable space. Crow owned four contiguous lots in the Owl Creek subdivision and a portion of his argument was based upon a theory that since he could build four separate houses with 8,000 square feet of habitable space, then he should be permitted to build one house with the larger dimensions on two of the adjoining lots. The covenants that applied to the Owl Creek subdivision permitted such a building plan. The minutes of the Board of County Commissioners contain the following entry concerning the application:

3. A request from Peter Moyer for his client Tom Crow. Mr. Crow has two lots in Owl Creek. He would like to combine the two lots and build a 12,000 square foot house. The Owl Creek covenants allow for this. However, the County does not deal with covenants and the County Plan only allows for an 8,000 square foot house. Bill Collins stated that Mr. Crow would need a Plan

---

1. The district court's original judgment was filed on January 24, 2005. On February 3, 2005, Teton County filed a motion to correct a clerical mistake in the judgment. On February 22, 2005, Teton County filed a notice of appeal making reference to the original judgment. On February 23, 2005, the district court entered an order amending the original judgment, and that amendment affected only paragraph 3, of the original judgment quoted in detail above. On March 15, 2005, Teton County filed a notice of appeal making reference to the order amending the original judgment. For these reasons, this case is captioned with two docket numbers, 05–111 and 05–112. However, for purposes of disposition, we will treat the cases as consolidated.

Amendment or a Variance. Peter stated that it comes down to whether it is grandfathered. Sandy stated that this was not grandfathered when the Plan was adopted.

So far as the record on appeal shows, Crow did not seek a plan amendment or a variance, nor did he further explore by administrative means whether or not his property was "grandfathered" so as not to be affected by the adoption of the 1994 LDR's.

In April of 1996, Crow, acting through Overton,[2] who is a general contractor, obtained a building permit to construct a house with approximately 8,000 square feet of habitable space, and 10,000 square feet overall, on Lot 36 (the permit was limited only to Lot 36 and did not relate to any of the other contiguous lots owned by Crow).

Shortly after the house was completed in December of 1998, Crow appears to have added about 3,000 square feet of habitable living space by adding two bedrooms and three bathrooms under the existing vaulted roofs of two attached garages and the master bed/bath, as well as converting a porch to habitable space. It was Crow's contention that this work was done "for safety concerns, for purposes of heating efficiency and to accommodate the needs of his extended family." Crow contends that this work did not change the exterior or "footprint" of the house at all, although Teton County claims that to some small extent it did. It appears from some of the evidence in the record that the expansion of the Crow house was contemplated all along, but that the "Phase II" portion of the work was not begun until after the final inspection and approval of "Phase I" by Teton County, which was the initial 8,000 square feet of the house. The remodeling work was done by Overton without benefit of a building permit. Overton conceded that a permit was not sought because everyone knew one would not be granted.

In addition to seeking demolition of the unauthorized additions to Crow's house, Teton County sought authority to inspect the structure in order to ensure compliance with applicable laws and rules. and regulations. Teton County also seeks to collect the applicable fine of up to $750.00 per day for the entire time period at issue here (i.e., early January of 1999 until present time). Crow raised a number of counterclaims, in particular, challenging the constitutionality of certain of Teton County's LDR's. Crow also filed a separate action seeking declaratory and injunctive relief. The two actions were consolidated.

Crow articulated his "philosophy" with respect to the building, and then the expansion, of his Teton County house in this affidavit:

When Cally, my wife, and I were looking for the best possible place to build our retirement home, we decided upon Teton County from among many very desirable alternatives. We did so, in part, because of the relatively limited amount of land which could ever be developed, leaving most of Teton County in its natural state. It is very important to us to be able to reach [teach] our family, especially our grandchildren, the great value of associating with family and the importance and beauty of nature, especially as found in Teton County.

Among our many considerations in deciding where to retire was that we wanted to build a home, not only where we could spend our entire lives, but one that would be an especially attractive and suitable place for our entire family, including our children and particularly grandchildren. We knew we would have to compete for our children's and our grandchildren's time, so we wanted to build a home where they would want to come and bring their friends. Our approach has worked. We have been blessed and continue to be blessed with numerous visits. We are committed to teaching our family, especially our grandchildren, the incalculable impor-

---

**2.** Jeffrey Overton is the contractor who did the initial construction, as well as the remodeling/expansion of Crow's home. He is not a party to this appeal, although he was fined the sum of $36,300.00 for his failure to obtain a development permit for the expansion project.

tance of sense of family, of associating with one's family and of appreciating nature to a healthy and balanced life. We wanted a home that could accommodate our extended family in a place where the beauty of nature is obvious and abundant. We wanted a place which would be consistent with encouraging those values and conducive to passing them along to our grandchildren, especially. We felt the need to make a place that would be so attractive that other demands on their time would be overcome. That approach demanded that we build a home of a certain size with sufficient bedrooms. Our approach would have the advantages that we would more likely see them more often, they would have exposure to those values that, for us, are among the most important in life, and incidentally, we would also get to know with whom they were consorting. We have been visiting the Jackson area since 1995. We are certain that Jackson Hole is the right place, and that our home is as it needs to be to accommodate our extended family and to attract our children and grandchildren in order to inculcate the values we believe they will need as they carry forth in their own lives.

*Crow I*, ¶¶ 9–13, 65 P.3d at 724–726.

[¶ 7] On remand, a trial was conducted. The evidence presented demonstrated that the alterations to Crow's home enlarged its inhabitable space from 7,998.7 square feet to 11,304 square feet. The district court characterized the alterations as "substantial," indeed, they increased the habitable space of the home by over 41%. The district court also concluded that the Crows "embarked on a clear, detailed, and premeditated plan to construct their residence to its ultimate dimensions with the knowledge that in doing so, they were violating and attempting to avoid the provisions of Teton County's Land Development Regulations." In addition, the district court concluded that Crow's violation of the LDRs "resulted from conscious wrongdoing[.]"

## STANDARD OF REVIEW

[¶ 8] The issues at hand are governed by statutes that were applied by the district court in this case. The first of these statutes is Wyo. Stat. Ann § 18–5–204 (LexisNexis 2005):

No person shall locate, erect, construct, reconstruct, enlarge, change, maintain or use any building or use any land in violation of a resolution or amendment adopted by any board of county commissioners under W.S. 18–5–202(c). Each day's continuation of such violation is a separate offense.

No issue is raised, and we acknowledge as well that none could be, but that Crow altered and enlarged his home in violation of a resolution adopting land use regulations for the purposes of planning and zoning.

[¶ 9] Wyo. Stat. Ann § 18–5–205 (LexisNexis 2005) provides:

Any zoning resolution passed by the board pursuant to W.S. 18–5–202(b) and (c) is enforceable in addition to other remedies provided by law by injunction, mandamus or abatement.

[¶ 10] Wyo. Stat. Ann. § 18–5–206 (LexisNexis 2005) provides:

Whoever violates any provision of W.S. 18–5–201 through 18–5–204 shall be fined not more than seven hundred fifty dollars ($750.00) for each offense.

[¶ 11] No issues of statutory construction are invoked by this appeal and we perceive none to be self-evident. Wyo. Stat. Ann. § 18–5–205 provides that abatement is one potential remedy that may be imposed by the district court for a violation such as that committed by Crow. In these circumstances, abatement means that the offending alterations would be required to be removed. Thus, it is our conclusion that in enforcing this statute, the district court is invested with a measure of discretion. Our objective with respect to the enforcement of this statute is to ascertain if the district court abused its discretion by its failure to require abatement.

[¶ 12] We have stated that judicial discretion is a composite of many things, among which are conclusions drawn from

objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. See *Rodenbough v. Miller*, 2006 WY 19, ¶ 8, 127 P.3d 800, 802 (Wyo.2006) (quoting *Watson v. Watson*, 2002 WY 180, ¶ 4, 60 P.3d 124, 125 (Wyo.2002)). With respect to the enforcement of Wyo. Stat. Ann. § 18–5–206 the district court is afforded very little discretion. The district court's task is to ascertain with accuracy the number of days the statute has been violated, as set out in Wyo. Stat. Ann. § 18–5–204, and to impose a fine of not more than $750.00 for each of those days. We also look to the pertinent authorities concerning such zoning and planning violations as those at issue here in order to flesh out the more exact perimeters of the district court's discretion in these circumstances.

## Abatement

[¶ 13] A zoning authority, such as Teton County in this instance, is authorized to enforce applicable regulations. Ordinarily, it is also the duty of a zoning authority to enforce such regulations, and mandamus may be brought to compel performance of this duty. 101A C.J.S. *Zoning and Land Planning* § 392 (2005).

[¶ 14] In this case, Teton County sought to enforce its LDRs by means of abatement of all additions completed in violation of the LDRs:

> The violation of a zoning regulation or ordinance may be enjoined, in a proper case, even though an injunction is not specifically permitted or authorized by the ordinance. Moreover, the violation of a zoning regulation may be enjoined under various statutes which confer on municipalities the power to enact zoning ordinances or bylaws and also authorize an injunction to restrain violations of such laws. In order to warrant injunctive relief, there generally must be proof of a violation, or a proposed violation, of some specific provision of a zoning ordinance.
>
> As a general rule, the granting or refusal of an injunction to restrain the violation of a zoning regulation is a matter for the discretion of the court.

A municipality does not have to show irreparable injury where it is authorized to seek a statutory injunction to enjoin a zoning ordinance violation. Furthermore, a municipality has authority to obtain a temporary restraining order and preliminary injunction strictly enforcing its zoning ordinances without alleging special injury or damage to the public, and the commission of the prohibited act ordinarily is sufficient to warrant granting the injunction.

If a zoning violation is substantial and involves conscious wrongdoing, a city may be entitled to an injunction, including a mandatory injunction to remove an offending structure, as a matter of course. On the other hand, although it ordinarily is not necessary that a town show irreparable harm as a condition to obtaining injunctive relief in connection with an alleged ongoing zoning violation, whether such relief should be extended is still governed by equitable principles. Since a suit for an injunctional order for ordinance violation is addressed to the discretion of the court, a balancing of the competing equities and interests involved may be required. Thus, while a violation of a valid zoning ordinance may be sufficient to justify, or allow, the granting of injunctive relief, a violation is not necessarily sufficient, by itself, to mandate, or require, the issuance of an injunction.

101A C.J.S. *Zoning and Land Planning* § 396 (2005); also see 2 E.C. Yokley, *Zoning Law and Practice*, § 15–6 (4th ed.2001 and Cum.Supp.2005); *Johnson v. Hermes Associates Ltd.*, 2005 UT 82, ¶ 17, 128 P.3d 1151, 1157 (Utah 2005) ("... [A] *county* may obtain an injunction against a party in violation of a zoning ordinance because 'a violation of a zoning ordinance is also a crime, a showing that the zoning ordinance has been violated is tantamount to irreparable injury ... to the public.' "); *Village of Hobart v. Brown County*, 2005 WI 78, ¶¶ 31–37, 281 Wis.2d 628, 698 N.W.2d 83, 91–93 (2005) (trial court must weigh equitable considerations and determine if its equitable power to deny an injunction, or any other enforcement mechanism, was appropriate under the totality of the circumstances presented.); *Town of Delafield v. Winkelman*, 2003 WI App 92, ¶ 9–20,

264 Wis.2d 264, 663 N.W.2d 324, 327–331 (2003) (raze order is equitable in nature; trial court required to balance equities); *County of Kendall v. Rosenwinkel*, 353 Ill. App.3d 529, 288 Ill.Dec. 737, 818 N.E.2d 425, 434 (Ill.App. 2 Dist.2004) (It is well established that where government is expressly authorized by statute to seek injunctive relief, the three traditional equitable elements necessary to obtain injunction *need not* be satisfied, i.e., need not show (1) no adequate remedy at law, (2) possess a certain and clearly ascertainable right, and (3) will suffer irreparable harm); *Pinecrest Lakes, Inc. v. Shidel*, 795 So.2d 191, 206–209 (Fla.App. 4 Dist.2001) (Where statute fixes injunction as primary enforcement mechanism, trial court lacks discretion; even inequitable loss to property owner not ground for denying injunction.); and *In re Letourneau*, 168 Vt. 539, 726 A.2d 31, 39 (1998) ("We held in [*Town of Sherburne v. Carpenter*, [155 Vt. 126] 582 A.2d 145 (Vt.1990) ], and have subsequently reiterated, that '[i]f the zoning violation is substantial and involves conscious wrongdoing, the [municipality] is entitled to an injunction, including a mandatory injunction to remove an offending structure, as a matter of course.' " (collecting cases)).

■ [¶ 15] The district court reached these conclusions with respect to abatement:

105. Abatement of the violation therefore requires serious consideration from the Court. The conduct of the Crows and Overton was deliberate, premeditated, and egregious. However, the Court believes the interests of the citizens of Teton County are adequately addressed by the fines imposed herein.

106. The Court's leniency in this regard should not, however, be misconstrued. The Court has the authority to order abatement as a remedy for violations of Teton County's LDR's and these parties and future litigants are on notice that the remedy of abatement is likely for future violations brought to this Court's attention.

[¶ 16] The district court was correct insofar as it determined that it had the authority to order abatement. However, based on the authority recited above, we agree that Teton County, the zoning and planning authority, need not make a showing of irreparable injury. The violation of the LDR constitutes a basis for the imposition of an abatement order. The district court is required to make specific findings balancing the equities. Only then may the district court ascertain if its equitable *power to deny* an injunction, or any other enforcement mechanism, is appropriate under the totality of the circumstances presented.

**Fines**

■ [¶ 17] As noted above, the district court imposed a fine on Crow for 242 days in connection with Crow's violation of the habitable space regulation. It is evident that Crow's violation of that regulation continued for a considerably longer time than 242 days, although we decline to make a precise calculation in that regard in disposing of this appeal. It is also readily evident to this Court that Wyo. Stat. Ann. §§ 18–5–204 and 18–5–206 make imposition of a fine mandatory for each day a violation continues. See *Merrill v. Jansma*, 2004 WY 26, ¶ 42, 86 P.3d 270, 288 (Wyo.2004); also see 2 E.C. Yokley, *supra*, § 15–2 at 15–3; and *Wright v. City of Guthrie*, 150 Okla. 171, 1 P.2d 162, 163–64 (1931). We agree with Teton County that the district court is required to impose a fine for each day Crow's habitable space violation continued, and that the record does not reflect a stipulation by Teton County that the fine should be imposed for a lesser period of time.

**CONCLUSION**

[¶ 18] The Judgment of the district court is reversed, and this matter is remanded to the district court for further proceedings consistent with this opinion.