2007 WY 177

The BOARD OF COUNTY COMMIS-
SIONERS OF TETON COUNTY,
Wyoming, Appellant (Plaintiff),

v.

Thomas L. CROW and Carol–Ann Crow,
James E. Moeller and Southpac Trust
International Inc., Trustees of the TLC/
CGC Trust, Appellees (Defendants).

No. S–07–0031.

Supreme Court of Wyoming.

Nov. 5, 2007.

Representing Appellant: James L. Radda,
Deputy County Attorney, Jackson, Wyoming.

Representing Appellees: Bradford S.
Mead and Katherine L. Mead, Jackson, Wyo-
ming; and Tim Newcomb of Grant & New-
comb, Laramie, Wyoming.

Before VOIGT, C.J., and GOLDEN,
HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1]   The Board of County Commissioners of Teton County (Teton County) challenges an order of the district court that declined to order the abatement (removal) of excessive square footage added to a home built by Thomas and Carol–Ann Crow (Crows).  The maximum square footage allowed by the Teton County Land Development Regulations (LDRs) is 8,000 square feet of habitable space.  The home in question was originally designed as an 8,000 square foot home, but a contingency set of plans provided for renovation of that design so as to enlarge it to 11,000 square feet, without changing the "footprint" of the home.  Immediately following the issuance of a certificate of occupancy for the 8,000 square foot home, the Crows enlarged the home to 11,000 square feet by converting porches to habitable space, and by flooring in rooms with cathedral ceilings so as to provide more habitable space.

[¶ 2]   In *Board of County Commissioners v. Crow*, 2003 WY 40, 65 P.3d 720 (Wyo. 2003), we reversed an order of the district court that found the LDRs were unconstitutional as applied to the Crows.  Our conclusion was that the LDRs did not violate substantive due process either facially or as applied, and that Teton County had the statutory authority to enact the LDRs. We remanded the matter back to the district court for reconsideration in light of that decision.

[¶ 3]   In *Board of County Commissioners v. Crow*, 2006 WY 45, 131 P.3d 988 (Wyo. 2006), we reversed an order of the district court which imposed fines that appeared to be inconsistent with the penalty provisions of the statutes the Crows violated and which did not provide for abatement of the 3,000 square feet of habitable space that the Crows added to the house in violation of the LDRs, a penalty also contemplated by the governing statute, in addition to the fines.  We remanded the case to the district court to reconsider the fine imposed, as well as to more meaningfully address the issue of abatement, in light of the prevailing authority which we

deemed pertinent to the answer to those questions.

[¶ 4]   On December 18, 2006, the district court issued an order which we will set out in detail below.  Teton County appeals yet again, claiming that the district court erred in declining to order abatement of the offending 3,000 square feet that has constituted a continuous violation of the LDRs since it was constructed.  We will affirm that order.

## ISSUES

[¶ 5]   Teton County raises these issues:

1.   Is the district court's "perception and finding" that confusion, disagreement and lack of clarity as to how to interpret and enforce Section 2450 "undoubtedly influenced by the Crow's decision to embark and continue on their ill advised course," clearly erroneous?

2.   Is the district court's "perception and finding" that the County's previous enforcement efforts "undoubtedly influenced the Crows' decision to embark and continue on their ill advised course," clearly erroneous?

3.   Did the district court abuse its limited discretion in denying the requested abatement, under the totality of the circumstances presented, thereby allowing the Crows to purchase a variance to which they are not otherwise legally or equitably entitled?

In response, the Crows query:

I.   Should the County's appeal be dismissed as nothing more than a reiteration of its last appeal?

II.   Were the district court's conclusions that abatement was not necessary in this case clearly erroneous, an abuse of discretion, or arbitrary and capricious?

Although it is not included in their statement of the issues, the Crows state that the court should find "that the County's appeal is frivolous and award Crows their costs on appeal.[1]"

---

1.   Although not specified in the brief, we assume that the Crows make reference to W.R.A.P. 10.05 which provides:

> If the judgment or appealable order is affirmed in a civil case, appellee shall recover the cost for publication of the brief with the

[¶ 6] In its reply brief, Teton County asks that we address these additional arguments:

1. Assuming, *arguendo*, that there is a factual basis in the record for the district court's perception and finding that confusion, disagreement and lack of clarity as to how to interpret and enforce Section 2450 "undoubtedly influenced the Crows' decision to embark and continue on their ill-advised course," as urged by the Crows, the Crows' argument still fails because any confusion, disagreement or lack of clarity that the Crows or their architects may have had prior to trial was resolved (1) around the same time that the Crows began planning to intentionally violate Section 2450, and (2) long before the Crows began actual construction of the unpermitted additions to their home.

2. Assuming, *arguendo*, that there is a factual basis in the record for the district court's perception and finding that the County's previous enforcement efforts "undoubtedly influenced the Crows' decision to embark and continue on their ill-advised course," as urged by the Crows, the Crows' argument still fails because the County's "previous enforcement efforts" (1) occurred after the Crows embarked on their ill-advised course; (2) concerned relatively minor violations of Section 2450; and (3) do not justify the Crows' intention[al] violation of Section 2450.

## FACTS AND PROCEEDINGS

[¶ 7] In our most recent consideration of this case, we provided this general guidance to the district court in order to explain the purpose of the remand:

The district court reached these conclusions with respect to abatement:

105. Abatement of the violation therefore requires serious consideration from the Court. The conduct of the Crows and Overton was deliberate, premeditated, and egregious. However, the Court believes the interests of the citizens of Teton County are adequately addressed by the fines imposed herein.

106. The Court's leniency in this regard should not, however, be misconstrued. The Court has the authority to order abatement as a remedy for violations of Teton County's LDR's and these parties and future litigants are on notice that the remedy of abatement is likely for future violations brought to this Court's attention.

The district court was correct insofar as it determined that it had the authority to order abatement. However, based on the authority recited above, we agree that Teton County, the zoning and planning authority, need not make a showing of irreparable injury. The violation of the LDR constitutes a basis for the imposition of an abatement order. The district court is required to make specific findings balancing the equities. Only then may the district court ascertain if its equitable power to deny an injunction, or any other enforcement mechanism, is appropriate under the totality of the circumstances presented.

**Fines**

As noted above, the district court imposed a fine on Crow for 242 days in connection with Crow's violation of the habitable space regulation. It is evident that Crow's violation of that regulation continued for a considerably longer time than 242 days, although we decline to make a precise calculation in that regard in disposing of this appeal. It is also readily evident to this Court that Wyo. Stat. Ann. §§ 18–5–204 and 18–5–206 make imposition of a fine mandatory for each day a violation continues. See *Merrill v. Jansma*, 2004 WY 26, ¶ 42, 86 P.3d 270, 288 (Wyo.2004); also see 2 E.C. Yokley, *supra*, § 15–2 at 15–3; and *Wright v. City of Guthrie*, 150 Okla. 171, 1 P.2d 162, 163–64 (1931). We agree with Teton County

cost to be computed at the rate allowed by law for making the transcript of the evidence. If the court certifies there was no reasonable cause for the appeal, a reasonable amount for attorneys' fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case. The amount for attorneys' fees shall not be less than one hundred dollars ($100.00) nor more than five thousand dollars ($5,000.00). The amount for damages to the appellee shall not exceed two thousand dollars ($2,000.00).

that the district court is required to impose a fine for each day Crow's habitable space violation continued, and that the record does not reflect a stipulation by Teton County that the fine should be imposed for a lesser period of time.

*Crow,* ¶¶ 15–16, 131 P.3d at 994.

[¶ 8] The facts of this case are well summarized in our prior opinions and we will not iterate them here. Each of the parties filed a brief after the second remand, and it is clear that the district court carefully considered those briefs, as well as the evidence developed at the May 3–5, 2004 hearing held after our first remand. Based on those materials the district court issued the following order:

1. The original and amended judgments entered in this matter on January 24, 2005 and February 22, 2005 detailed with particularity the Court's perception of the defendants' (Crows) conduct in this matter.

2. Specifically, the Court found that the Crows' conduct in violating Sections 1320 and 2450 was deliberate, premeditated and egregious.

3. The Court did not sufficiently detail the factors that it considered, in the exercise of its discretion, in declining to order abatement [demolition and removal and/or closing off some habitable areas that were added to the house by flooring in cathedral ceilings] as proposed by the County. The Supreme Court was entirely correct to remand this matter with instructions to consider and address this deficiency.

4. The factors considered by the Court in declining to order abatement fall into three general categories: 1) the size, character, and use of the house; 2) the conduct of the County officials and employees; and 3) the interest and benefit to the citizens of Teton County.

5. With respect to the size, character, and use of the home, the Court considered that the "footprint" or the outside dimensions of the house did not materially change (with the exception of the two exterior porches) from the dimensions actually approved by the County.

6. The Crows' home is not a 20 story edifice [2] or a garish eyesore completely out of character with the community as a whole or the prevailing architecture. No complaints were expressed by the Crows' neighbors. The home otherwise complies with the restrictive covenants of the subdivision in which it is located and in the absence of the interior additions and alterations illegally added, would have complied with Teton County LDR's.

7. The Court is of the opinion that the scheme of abatement proposed by the County is not likely to materially change or increase the use and occupancy of the residence by the Crows. The Crows own the adjoining lot in the subdivision and could conceivably achieve the same result by building a second home or guest house. The Court further notes that the provisions of Section 2450 do not even apply to habitable space below ground level and the testimony and evidence at trial indicated that the Crow residence contained substantial finished basement area that was not included in the calculations as habitable space [ . . . ] but could be utilized and /or converted to serve the same purposes

---

**2.** This is a reference to a case cited in our remand wherein a builder was required to abate (tear down) a twenty-story apartment building because it was built in violation of land development regulations limiting structures to single family dwellings (no more than two per acre). *Pinecrest Lakes, Inc. v. Shidel,* 795 So.2d 191 (Fla.App. 4 Dist.2001). In a later finding, the district court may also be referring to this case, which was initiated by neighboring property owners who owned single family dwellings.

This quotation from the *Pinecrest* case is, perhaps, especially apropos in these sorts of circumstances:

The statute says that an affected or aggrieved party may bring an action to enjoin an inconsistent development allowed by the County under its Comprehensive Plan. The statutory rule is that if you build it, and in court it later proves inconsistent, it will have to come down. The court's injunction enforces the statutory scheme as written. The County has been ordered to comply with its own Comprehensive Plan and restricted from allowing inconsistent development; and the developer has been found to have built an inconsistent land use and has been ordered to remove it. The rule of law has prevailed.

*Pinecrest,* 795 So.2d at 209.

as the offending portions of the Crow residence the County seeks to block off.

8. With respect to the conduct of County officials and employees, the Court finds there was considerable confusion, disagreement, and lack of clarity as to how to interpret and enforce the Teton County Land Development Regulations, Section 2450 in particular. Those issues are detailed in the references to the trial transcript as set forth on page 2 of *Defendant's Crow's Memorandum on the Issue of Abatement and Fines and Proposed Order Regarding the Same* filed herein.

9. The Court further finds that the previous enforcement efforts of the County have been characterized generally by some combination of the issuance of variances, and/or after the fact permits and modest fines. Those previous enforcement actions and efforts are detailed in the references to the trial transcripts set forth on page 3 of *Defendant's Crow's Memorandum on the Issue of Abatement and Fines and Proposed Order Regarding the Same.*

10. The significance of the foregoing, in terms of balancing the equities is the Court's perception, and finding, that the County's prior conduct undoubtedly influenced the Crows' decision to embark and continue on their ill-advised course, and in the Court's opinion, under the facts of this case, degrade the County's expressed concern for the connection between the limitations imposed by Section 2450 and the stated public objective.

11. In terms of the interest Teton County has in enforcing the Land Development Regulations, the Court was originally and remains of the opinion that those interests are adequately served without requiring abatement.

12. The Court notes that the Supreme Court in *Crow I* upheld and validated the constitutionality of the County's land development regulation scheme generally. Section 2450 was specifically held to be valid and enforceable.

13. Significantly, this Court held that the provisions of Sections 1350 and 2450 applied not only to the Crows but to their contractor (Overton) as well. In addition, the Court levied a fine of $38,500.00 on the Crows' contractor. The fine has been paid and the contractor did not appeal. This finding and judgment by the Court represents a strong precedent in any future enforcement action and while the Crows and others similarly situated might be blessed with significant financial resources, the Court believes the extension of liability to the actual builder and the fine assessed against the builder, will have a significant chilling effect on future violations and ultimately may represent the most important aspect of this litigation.[3]

14. The total fine assessed against the Crows for their violation of Section 1350 and 2450 was $363,000. To the Court's knowledge, this fine far exceeds any previous fine levied in Teton County and as far as the Court was able to determine, it exceeds any fine previously levied in a residential setting on any individual in the State of Wyoming.[4]

15. Based on the foregoing and in attempting to balance the equities of the parties and [to] serve the interests of the citizens of Teton County, the Court determined that a measured and escalated response in terms of the penalty assessed in this case was appropriate, together with a clear statement and warning that future violations of a similar nature would be met with an abatement order.

[¶ 9] The remainder of the district court's order dealt with the matter of the fines to be imposed and when the time for ceasing the

---

3. This particular paragraph in the district court's balancing formula is not of particular significance in our analysis of this case, because it does not take into account that the fine may well have been paid (or in the future will be paid) by the homeowner on behalf of the contractor. The real chilling effect might better lie in the loss of the privilege (license) to act as a contractor in Teton County, or some documentable proof that the burden of such a fine actually does fall on the shoulders of the contractor.

4. This particular paragraph is not without some substance, but the much larger question and the much more onerous burden in most cases will be abatement, rather than mere fines (unless the fines exceed the value of the structure and the cost of its abatement combined).

continued accumulation of fines would occur. In a modification of the December 18, 2006 Order, entered in the record on January 29, 2007, the district court clarified that the total fines to be paid by the Crows was $714,000.00. Neither party appealed from that order.

## DISCUSSION

[¶ 10] Our discussion need be only very brief. We agree with Teton County that Paragraphs 8, 9, and 10 of the district court's order are unsound, and we do not rely on them in our decision to affirm the district court's ultimate conclusion. There is no evidence in the record that the Crows were influenced to break the law because they saw others around them being allowed to do so. However, even if that were the case, it would not constitute an "equity" to be balanced in their favor in circumstances such as this. In an equitable weighing process, those factors could only be considered as further evidence of duplicity and dishonesty. Similarly, even if the Crows detected "confusion" as to exactly how the LDRs should be interpreted, the actions they decided to undertake could not be justified. Their "confusion," if there was any at all, was answered by the denial of their request for a variance, which they decided to flout rather than to clarify by further administrative means. To suggest that that aspect of the processes at work here could excuse, or even explain in part, what the Crows did in this case is disingenuous.

[¶ 11] The County asserts that the imposition of fines merely allows the Crows to buy a right to violate the law or to procure an "after the fact" variance. We cannot disagree that there is a significant measure of truth in that observation.

[¶ 12] However, we have often recited the definition of judicial discretion as "a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." We must ask ourselves whether the district court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious. *Thomas v. Thomas,* 983 P.2d 717, 719 (Wyo.1999).

[¶ 13] We conclude that in its totality, the district court's balancing process resulted in a reasoned decision and was not an abuse of discretion. The court properly considered the size, character, and use of the house and interest the County has in enforcement of its regulations. Given the unique facts with which the district court was presented, the remedy chosen by the district court was not unreasonable and was supported by the record.

[¶ 14] We will briefly mention that Teton County's appeal was clearly meritorious, and so no award of attorneys' fees or damages will be made.

## CONCLUSION

[¶ 15] We affirm the district court's December 18, 2006 order denying abatement. The court's balancing of the equities was supported by the evidence and within the court's sound discretion. The accumulation of fines for the subject violations ceased as of the entry of the district court's clarifying order entered on January 29, 2007.