# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 113

OCTOBER TERM, A.D. 2023

November 28, 2023

J. WILLIAM WINNEY, JR.,

Appellant
(Plaintiff),

v.

S-23-0075

MICHAEL TROY JERUP,

Appellee
(Defendant).

*Appeal from the District Court of Sublette County*
*The Honorable Kate G. McKay, Judge*

*Representing Appellant:*
    *Clark Stith, Rock Springs, Wyoming.*

*Representing Appellee:*
    *Stuart R. Day and Erica R. Day, Williams, Porter, Day & Neville, P.C. Casper, Wyoming. Argument by Ms. Day.*

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

*FOX, C.J., delivers the opinion of the Court; FENN, J., files an opinion concurring in part and dissenting in part.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    J. William Winney, Jr. sued neighboring property owner, Michael Troy Jerup, claiming Mr. Jerup constructed an outbuilding in violation of setback requirements governing their properties. The district court found the building violated the setback requirements but denied Mr. Winney's request for an order requiring that the structure be removed or relocated. We affirm.

*ISSUES*

[¶2]    This appeal presents three issues:

> 1. Did the district court err in denying Mr. Winney's request for an injunction on the ground that it was untimely?
>
> 2. Did the district court err in ruling that proof of an injury was an element of Mr. Winney's request for an order enjoining Mr. Jerup's violation of the protective covenants?
>
> 3. Did the district court err in denying Mr. Winney's request for an injunction requiring Mr. Jerup to remove or relocate the outbuilding he placed in violation of the applicable setback requirements?

*FACTS*

[¶3]    Mr. Winney and Mr. Jerup reside on adjoining properties in the Hoback Ranches subdivision in Sublette County, Wyoming. All of the properties in the subdivision are subject to protective covenants, which have a stated purpose

> to insure the use of the property for attractive residential purposes, to prevent nuisances, to prevent the impairment of the attractiveness of the property, to maintain the natural environment and protect the ecology of the area, and thereby secure to each tract owner the full benefit and enjoyment of his respective tract.

[¶4]    The covenants contain two provisions governing setbacks. Paragraph 17 specifies that "[n]o building or any part thereof, including garages and porches, shall be erected on any tract closer than 100 feet to any edge of said tract." Paragraph 20 provides in relevant part:

1

> There are hereby reserved to grantors, for the purpose of having adequate bridle paths, roadways, and utility easements to serve each tract, a perpetual easement of 33 feet in width along each edge of the herein described tract, for the purpose of erecting, constructing, and maintaining bridle paths, roadways, and public utility facilities, both underground and overhead.

[¶5]   In 2018, Mr. Jerup began plans to construct an outbuilding to store his road maintenance equipment.[1] Based on the topography of his property, he chose the only remaining site that could accommodate the structure and its intended use. He knew the site was entirely within the 100-foot setback imposed by the protective covenants, but unbeknownst to him, a portion of the site also encroached thirteen feet into the 33-foot setback.[2]

[¶6]   Because the building site was within the 100-foot setback, Mr. Jerup contacted Clinton Cragg, the neighbor whose property bordered the proposed building site, and offered to purchase his property. Mr. Cragg did not wish to sell his property but offered to execute an encroachment agreement by which he waived any objection to the encroachment on the 100-foot setback. Mr. Cragg executed the encroachment agreement on March 29, 2019, and it was recorded on May 1, 2019.

[¶7]   In June 2019, Mr. Jerup began clearing ground in preparation for construction of the outbuilding. By July 8, 2019, the building was framed, and the roof trusses were in place. Mr. Winney observed the construction activity, and by the second week of July 2019, he knew the structure violated the setback requirements of the protective covenants.

> Somewheres around the second week of July, I started looking more closely and I started to see some indication that it was going to be a building, so then the next question I had was if it's a building, does it comply with the covenants or not. I mean if it complied with the covenants, then end of

---

[1] Mr. Jerup's road maintenance equipment was the subject of prior litigation between these parties. *Winney v. Hoback Ranches Prop. Owners Improvement & Serv. Dist.*, 2021 WY 128, 499 P.3d 254 (Wyo. 2021). Mr. Winney sued Mr. Jerup claiming that storage of the equipment on his property violated the protective covenant prohibiting commercial activity in the subdivision. *Id.* at ¶ 58, 499 P.3d at 269. The district court ruled in Mr. Jerup's favor, and we affirmed. *Id.* at ¶ 74, 499 P.3d at 272.

[2] In addition to the 33-foot setback in the covenants, the subdivision's plat specified that "[a]ll road right-of-way widths are 66 feet, 33 feet either side of the shown centerline[.]" *Winney*, 2021 WY 128, ¶ 3, 499 P.3d at 257. Because Vista Ridge Lane, the road on which Mr. Jerup resides, veers away from his property, his building site did not encroach on the right-of-way for that road.

issue. Well, it didn't. And I had to go figure out how to ascertain to a factual basis and to satisfy you, as my attorney, that, in fact, there was a violation. So I set about measuring things and came to realize he not only was well within the 100[-]foot setback requirements, but he probably was within the 33[-]foot.

[¶8]   On August 17, 2019, Mr. Jerup learned of Mr. Winney's objection to his outbuilding's location.[3] On August 21, Mr. Winney's attorney sent an email to Mr. Jerup's attorney asserting the outbuilding violated the 33-foot setback and demanding that Mr. Jerup cease construction and remove the building. On August 23, Mr. Winney's attorney sent a second email notifying Mr. Jerup's attorney that if construction continued, "the Winneys will likely be forced to seek an injunction to stop construction." On September 23, 2019, Mr. Winney's attorney sent a third email adding that the building violated the 100-foot setback.

[¶9]   When Mr. Jerup learned of Mr. Winney's objection, the building was fully framed, had rafters and its front beam in place, and was about to have plywood put on it. It was substantially completed in the fall of 2019, and as completed, it measured thirty feet wide by thirty-six feet long by nineteen feet high.[4]

[¶10] On November 8, 2019, Mr. Winney sued Mr. Jerup; he alleged Mr. Jerup's outbuilding violated the 33 and 100-foot setbacks and requested an order directing Mr. Jerup to remove, or demolish and remove, the building from any location within the 100-foot setback. He also requested an award of attorney fees and costs. In support of the relief requested, Mr. Winney cited the enforcement provision of the protective covenants, which provides:

> If the owner of any tract conveyed by Hoback Ranches, or their heirs, or assigns shall violate any of the covenants or conditions hereinabove set forth, it shall be lawful for the grantor or any other person owning a tract conveyed by Hoback Ranches to prosecute any proceedings at law or in equity against the person or persons violating any of the covenants or conditions, and either to prevent him from doing so, or to recover damages, including costs and reasonable attorney fees, for such violation, or both.

---

[3] The record does not indicate how Mr. Jerup learned of the objection on that date.
[4] As originally constructed, the building had a dirt floor, but in the summer of 2020, Mr. Jerup completed additional work on it, which included pouring a concrete floor.

[¶11] The parties filed cross-motions for summary judgment, and the district court granted Mr. Winney's motion only as to the question of whether Mr. Jerup's outbuilding violated the 100 and 33-foot setbacks. It denied Mr. Winney's motion for summary judgment on his demand for injunctive relief and Mr. Jerup's motion on his affirmative defenses of laches and abandonment.

[¶12] Following a bench trial, the district court ruled in favor of Mr. Jerup. It found Mr. Winney unreasonably delayed commencing his action and that his delay prejudiced Mr. Jerup because he was unable to cure the setback violations, other than to remove or demolish the completed building. It further found that Mr. Winney failed to prove damages. After the court entered judgment, Mr. Winney timely appealed to this Court.

### STANDARD OF REVIEW

[¶13] Injunctions are "requests for equitable relief which are not granted as a matter of right but are within the lower court's equitable discretion." *Olsen v. Kilpatrick*, 2007 WY 103, ¶ 9, 161 P.3d 504, 507 (Wyo. 2007) (quoting *Polo Ranch Co. v. City of Cheyenne*, 2003 WY 15, ¶ 26, 61 P.3d 1255, 1264 (Wyo. 2003)); *see also EME Wyo., LLC v. BRW E.*, LLC, 2021 WY 64, ¶ 36, 486 P.3d 980, 990 (Wyo. 2021) ("Requests for equitable relief are matters over which the district court exercises broad discretion.") (quoting *Harber v. Jensen*, 2004 WY 104, ¶ 8, 97 P.3d 57, 60 (Wyo. 2004)). We thus review the court's decision for an abuse of discretion. *Operation Save Am. v. City of Jackson*, 2012 WY 51, ¶ 18, 275 P.3d 438, 447 (Wyo. 2012) (citing *In re Kite Ranch, LLC v. Powell Fam. of Yakima*, LLC, 2008 WY 39, ¶ 21, 181 P.3d 920, 926 (Wyo. 2008)).

[¶14] "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Evans v. Sharpe*, 2023 WY 55, ¶ 25, 530 P.3d 298, 307 (Wyo. 2023) (quoting *Johnson v. Clifford*, 2018 WY 59, ¶ 8, 418 P.3d 819, 822 (Wyo. 2018)).

> A district court does not abuse its discretion if it could reasonably conclude as it did. To determine whether the district court's decision was reasonable, we consider the evidence in the light most favorable to the district court's decision, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence. This Court may not reweigh the evidence.

*Id.*, 2023 WY 55, ¶ 26, 530 P.3d at 307 (cleaned up); *see also Olsen*, 2007 WY 103, ¶ 13, 161 P.3d at 508 (court's exercise of equitable discretion in enforcing restrictive covenant "will not be reversed absent a strong showing of abuse").

4

[¶15] "After a bench trial, we review the district court's findings of fact for clear error and legal conclusions de novo." *Aimone v. Aimone*, 2023 WY 43, ¶ 19, 529 P.3d 35, 41 (Wyo. 2023), *rehearing denied;* (citing *Lyman v. Childs*, 2023 WY 16, ¶ 10, 524 P.3d 744, 751 (Wyo. 2023)). Mr. Winney challenges the district court's legal conclusions and exercise of discretion, but he does not challenge any finding of fact we consider relevant to the court's exercise of its discretion.

## *DISCUSSION*

[¶16] In its decision letter, the district court summarized its ruling as follows:

> 32) The Covenants authorize Winney to prosecute "proceedings at law or in equity against the person or persons violating any of the covenants or conditions, . . . to prevent him from doing so . . . .." Jerup has proven that Winney unreasonably delayed commencing this action beyond a point where doing so could **prevent** Jerup from violating the easements or setbacks. This unreasonable delay caused prejudice and disadvantage to Jerup because he was unable to cure any easement or setback violations other than to remove or to demolish the completed Building.
>
> 33) The Covenants authorize Winney to prosecute "proceedings at law or in equity against the person or persons violating any of the covenants or conditions, . . . to recover damages, including costs and reasonable attorney fees, for such violation . . . .." Winney admits that he can prove no damages, and based upon the testimony and evidence at Trial, he has failed to prove that he has suffered damages by the presence of the Building in violation of any easements or setbacks.

[¶17] The district court's judgment included a finding that "Plaintiff failed to prove the elements of his claim against Defendant in trial, including that, without an injunction requiring demolition of the outbuilding at issue, he would suffer an injury." We conclude the court erred in denying injunctive relief as a matter of law based on Mr. Winney's delay in objecting and his lack of damages. Although the court's rationale for denying injunctive relief was error, we will affirm on alternative grounds.

[¶18] We will first address the error in the district court's rationale. We will then turn to a weighing of the equities of injunctive relief, which provides an alternative basis for affirming the court's denial of the requested relief.

5

***I.***       ***The district court erred in denying Mr. Winney's request for an injunction on the ground that it was untimely.***

[¶19]  Mr. Winney asserts the district court incorrectly construed the covenants to require him to commence legal action early enough to "prevent" Mr. Jerup's setback violation. Mr. Jerup responds that the district court imposed no such requirement and instead correctly ruled that Mr. Winney's action was barred by laches. We disagree that the district court found Mr. Winney's action was barred by laches.

[¶20]  The district court concluded Mr. Winney's delay in commencing his action barred injunctive relief, but in so holding, the court did not reference laches or conduct a laches analysis. Moreover, the crux of a laches defense is a party's detrimental reliance on another's delay. *See Tram Tower Townhouse Ass'n v. Weiner*, 2022 WY 58, ¶ 50, 509 P.3d 357, 368 (Wyo. 2022) ("We have said 'the party asserting the doctrine of laches must show that he relied upon the plaintiff's actions and changed his position in reliance thereon to his prejudice.'") (quoting *Hammond v. Hammond*, 14 P.3d 199, 201 (Wyo. 2000)). The court made no finding that Mr. Jerup relied on Mr. Winney's delay to his detriment. Nor would the record have supported such a finding; there is no evidence that Mr. Jerup continued construction of his outbuilding based on Mr. Winney's silence or a mistaken belief that Mr. Winney would acquiesce in his setback violations. The record is instead clear that Mr. Jerup knowingly built within the 100-foot setback based on his belief that his agreement with Mr. Cragg resolved any problem with the encroachment. Thus, while the court found Mr. Winney's delay significant, we cannot conclude it found, or could have found, his action was barred by laches.

[¶21]  Although the district court's ruling is not entirely clear, it appears, as Mr. Winney contends, that the court found the covenants' use of the term "prevent" required that an enforcement action be brought before a violation is complete. The court's interpretation finds no support in the plain meaning of the term "prevent."

[¶22]  "Covenants are contractual in nature and we therefore interpret them as we would a contract." *Sweetwater Station, LLC v. Pedri*, 2022 WY 163, ¶ 13, 522 P.3d 617, 622 (Wyo. 2022) (quoting *Winney*, 2021 WY 128, ¶ 46, 499 P.3d at 266). "Our goal is 'to determine and effectuate the intention of the parties, especially the grantor or declarant.'" *Id.* (quoting *Reichert v. Daugherty*, 2018 WY 103, ¶ 15, 425 P.3d 990, 995 (Wyo. 2018)). "The words used in the covenant are afforded the plain meaning that a reasonable person would give to them." *Id.*, 2022 WY 163, ¶ 14, 522 P.3d at 622 (quoting *Winney*, 2021 WY 128, ¶ 47, 499 P.3d at 266).

[¶23]  The protective covenants for the Hoback Ranches subdivision authorize any landowner in the subdivision "to prosecute any proceedings at law or in equity against the person or persons violating any of the covenants or conditions, and either to prevent him from doing so, or to recover damages, including costs and reasonable attorney fees, for

such violation, or both." A request for an injunction is a proceeding in equity, and an injunction may be prohibitory or mandatory. 42 Am. Jur. 2d *Injunctions* § 6 (May 2023 update). A prohibitory injunction maintains the status quo by restraining an act. *Id.* In contrast, "[a] mandatory injunction . . . does not maintain the status quo but rather compels the performance of an affirmative act." *Id.* (footnote omitted). "Mandatory injunctions are commonly issued to compel, among other things . . . the removal of encroachments[.]" *Id.* (footnote omitted).

[¶24] The covenants authorize an action in equity to *prevent* a violation. The plain meaning of the term "prevent" is "to keep from happening or existing." *Prevent*, *Merriam-Webster* https://www.merriam-webster.com/dictionary/prevent (last visited Oct. 1, 2023). A prohibitory injunction would keep a covenant violation from happening, whereas a mandatory injunction would keep a violation from existing. We thus conclude, based on the plain meaning of the term "prevent," that the grantor intended to authorize both types of relief. It is not a term that was intended to restrict the timing of an action in equity, and the district court erred in ruling otherwise.

## II. *The district court erred in ruling that proof of an injury was an element of Mr. Winney's request for an order enjoining Mr. Jerup's violation of the protective covenants.*

[¶25] Generally, a party seeking an injunction must show "the potential harm is irreparable and there is no adequate remedy at law to compensate for the harm." *In re Kite Ranch*, 2008 WY 39, ¶ 22, 181 P.3d at 926 (citing *Weiss v. Pedersen*, 933 P.2d 495, 498 (Wyo. 1997), *abrogated on other grounds by White v. Allen*, 2003 WY 39, 65 P.3d 395 (Wyo. 2003). The rule is different, however, in the case of an action to enforce protective covenants. We have held that "[a] covenant can be enforced without regard to the amount of damages which would result from a breach and even if there is no substantial monetary damage. [An injunction] is proper even in the absence of a showing of irreparable harm or uncompensable injury." *Morris v. Kadrmas*, 812 P.2d 549, 554 (Wyo. 1991) (citing *Dice v. Cent. Natrona Cnty. Improvement & Serv. Dist.*, 684 P.2d 815 (Wyo. 1989)); *see also Persimmon Hill First Homes Ass'n v. Lonsdale*, 75 P.3d 278, 282 (Kan. Ct. App. 2003) ("In the context of the substantive law of restrictive covenants, courts have generally recognized that damages are irrelevant to enforceability."). The district court thus erred in holding that a showing of harm was an element of Mr. Winney's action for injunctive relief.

***III.*** ***A weighing of the equities does not support issuance of a mandatory injunction requiring the destruction of Mr. Jerup's outbuilding, and we may affirm the district court's ruling on that alternate basis.[5]***

[¶26]  There is no question Mr. Jerup violated the covenants establishing the 100 and 33-foot setbacks. The district court found the violations, and Mr. Jerup has not challenged those findings on appeal. That of course does not end the inquiry. *Bd. of Cnty. Comm'rs of Teton Cnty. v. Crow*, 2006 WY 45, ¶ 14, 131 P.3d 988, 993 (Wyo. 2006) *(Crow II)* (the fact of a violation alone does not necessarily require issuance of an injunction).[6] Even when an injunction is authorized by contract or statute, the decision whether to grant such relief remains committed to the district court's discretion. *CBM Geosolutions, Inc. v. Gas Sensing Tech. Corp.*, 2009 WY 113, ¶ 9, 215 P.3d 1054, 1058 (Wyo. 2009) (recognizing fact that contract contemplates injunctive relief is only a factor in weighing of equities); *Bjork v. Draper*, 936 N.E.2d 763, 772 (Ill. App. Ct. 2010) (rejecting argument that failure to order removal of offending structure renders easement provision meaningless).

[¶27]  Whether an injunction will be issued depends on a weighing of the equities. *Crow II*, 2006 WY 45, ¶ 16, 131 P.3d at 994 (court's denial of injunction or other enforcement mechanism must be based on a balancing of equities); *Keller v. Branton*, 667 P.2d 650, 652 (Wyo. 1983) (upholding denial of injunction based on weighing of equities); *Woodland Trails N. Cmty. Improvement Ass'n v. Grider*, 656 S.W.2d 919, 921-22 (Tex. App. 1983) ("The court was empowered, indeed required, to balance the equities . . . in deciding whether injunctive relief should be granted."). Although the district court erred in denying injunctive relief as a matter of law based on Mr. Winney's delay and lack of damages, these are both factors that may be considered in weighing the equities. *See* 42 Am. Jur. 2d *Injunctions* § 15 (May 2023 update) (factors to consider include gravity and

---

[5] Mr. Jerup contends the record supports the district court's ruling that the setback requirements were abandoned, and the court's decision should be upheld on that basis. We disagree. First, we do not read the court's decision as concluding the setback requirements were abandoned through acquiescence in their violation. Though the court found the subdivision landowners' failure to act on numerous setback violations was circumstantial evidence of abandonment, it did not address whether the permitted setback violations were "so substantial as to support a finding that the usefulness of the covenant has been destroyed, or that the covenant has become valueless and onerous to the property owners." *Winney*, 2021 WY 128, ¶ 54, 499 P.3d at 268 (outlining test to determine abandonment) (quoting *Steiger v. Happy Valley Homeowners Ass'n*, 2010 WY 158, ¶ 29, 245 P.3d 269, 277-78 (Wyo. 2010)). Second, we have reviewed the record and found no evidence that the permitted setback violations were so widespread that they have rendered the setback covenants valueless. Abandonment is therefore not a basis on which to affirm the court's decision.

[6] In this opinion, we reference our decisions in *Crow II* and *Crow III*. *Crow I* addressed whether the development regulations at issue in that case violated the defendant's substantive due process rights and is not relevant to our discussion. *See Bd. of Cnty. Comm'rs of Teton Cnty. v. Crow*, 2003 WY 40, 65 P.3d 720 (Wyo. 2003).

willfulness of violation, delay in asserting one's rights, and discrepancy between costs and benefits of an injunction); *see also Bd. of Cnty. Comm'rs of Teton Cnty. v. Crow*, 2007 WY 177, ¶ 8, 170 P.3d 117, 120 (Wyo. 2007) (*Crow III*) (egregiousness and seriousness of violation considered against benefit of abatement); *Keller*, 667 P.2d at 652 (upholding denial of injunction where cost of constructing carport and cost of its removal outweighed harm to appellees); *Honeycutt v. Brookings*, 996 So.2d 553, 560 (La. Ct. App. 2008) ("The trial court fashioned the most equitable remedy possible under the circumstances of this case, without requiring costly demolition of the outbuilding."); *Wimberly v. Caravello*, 149 P.3d 402, 409-10 (Wash. Ct. App. 2006) (factors may include bad faith, willfulness, or indifference of offender, nature of harm, and cost versus benefit of injunction); *Perel v. Brannan*, 594 S.E.2d 899, 904-05 (Va. 2004) (footnotes omitted) ("A defendant may avoid imposition of the remedy requested if such a remedy would create a hardship or injustice that is out of proportion to the relief sought[.]").

[¶28]  It is generally the district court that weighs the equities in the first instance. *Crow II*, 2006 WY 45, ¶¶ 16, 18, 131 P.3d at 994 (remanding for specific findings on equities); *Wilson v. Lucerne Canal & Power Co.*, 2003 WY 126, ¶ 10, 77 P.3d 412, 416 (Wyo. 2003) ("Where injunctive relief is sought, it is the trial court that grants or denies it, based upon the facts—not the appellate court[.]") (quoting *Polo Ranch*, 2003 WY 15, ¶ 25, 61 P.3d at 1264. It is not without precedent, however, for this Court to determine the propriety of an injunction without remanding.

[¶29]  For example, in *Morris*, the district court found a landowner lacked authority to challenge a violation of restrictive covenants and thus denied an injunction to remove the alleged offending structure. *Morris*, 812 P.2d at 553-54. This Court held the district court erred in so ruling, but it did not remand for a weighing of the equities. *Id.* at 554. It instead reversed, ordered that an injunction be entered, and detailed the terms of the injunction. *Id.* at 554.

[¶30]  In this case, the district court did not explicitly weigh the equities of ordering an injunction, but we have recognized that we may affirm a district court decision on any basis supported by the record.

> An appellate court may affirm a trial court ruling, even though the trial court's legal reasoning for the ruling was erroneous, if (1) the facts in the record are sufficient to support a proffered alternative basis, (2) the trial court's ruling is consistent with the view of the evidence under the alternative basis, and (3) the record is materially the same as would have been developed had the prevailing party raised the alternative basis for affirmance below.

9

*Hanft v. City of Laramie*, 2021 WY 52, ¶ 34, 485 P.3d 369, 381 (Wyo. 2021) (quoting *Prancing Antelope I, LLC v. Saratoga Inn Overlook Homeowners Ass'n, Inc.*, 2021 WY 3, ¶ 41, 478 P.3d 1171, 1182 (Wyo. 2021)); *see also Tram Tower*, 2022 WY 58, ¶ 43, 509 P.3d at 366-67 (affirming on equitable basis not reached by district court).

[¶31]  Although the district court did not explicitly rule that a weighing of the equities precluded injunctive relief, the parties argued the equities to the district court, and to this Court. Moreover, at trial, the court asked questions of Mr. Jerup that reflected an inquiry into the equities, such as Mr. Jerup's reason for continuing construction after he learned of Mr. Winney's objection and his reason for pouring a concrete pad in the structure while litigation over it was pending. Additionally, the court's decision letter is replete with findings relevant to a balancing of the equities. While we prefer that a district court weigh the equities of injunctive relief in the first instance, under these circumstances, and in the interests of judicial economy, we will do so based on the record before us.

**Gravity and Willfulness of the Violation**

[¶32]  Under this factor, we consider the severity of the violation and the extent to which Mr. Jerup knowingly began and continued construction with a disregard for the protective covenants.

[¶33]  As to the gravity of Mr. Jerup's violations, his violation of the 100-foot setback was substantial in that the entire structure sits within the setback. The violation of the 33-foot setback was less substantial; only one corner of the building encroaches thirteen feet into the setback.

[¶34]  As to the violation of the 100-foot setback, Mr. Jerup testified that he consulted with his builder and built on the only available site given the topography of his property. He also testified he knew of the topography of his property when he purchased it, and that the topography and setbacks might limit his building space, but he had learned that in those circumstances landowners could use encroachment agreements. He knew his building was located entirely within the 100-foot setback but believed he had resolved that concern by obtaining the encroachment agreement from Clinton Cragg. William Conley, a landowner in the subdivision and former chairman of Hoback Ranches Improvement and Service District, testified that he knew of other setback encroachments in the subdivision that were handled similarly.

[¶35]  As to the willfulness of his violations, Mr. Jerup knew of the 33-foot setback, but he did not knowingly encroach on it. He testified:

> I knew it was gonna be close, but we tried to get it 33
> feet back, that was from my builder. Obviously we should
> have paid for the surveyor, but he had a phone with the GPS

10

and he marked out the property line and he shortened the building and he was like we're right here, we're good.

[¶36] The district court also questioned Mr. Jerup's decision to continue construction after he learned of Mr. Winney's objection to the setback violations. Mr. Jerup testified:

> Yeah, I mean I kept going because at first I'm like – well, I feel like I got a building permit, I got an encroachment agreement with the guy that I thought I would be, you know, encroaching on, I thought I did things right, and I had already paid a guy $15,000 to do this, and it doesn't make sense to have him stop. Is that letter a bluff, is it – I didn't know what to do, honestly, so I just wanted to get the roof on it and see what happened. I didn't know what to do. I already invested all that money in it and it would be – I didn't want it sitting there like this for three years, you know, waiting to decide if it needs to be there or not.

[¶37] As to his decision to pour a concrete floor in the summer of 2020, Mr. Jerup testified that the building had design flaws in the types of doors it called for and in its snow load, and the concrete floor was poured to help address those concerns. The district court questioned Mr. Jerup's decision to do that while the litigation was pending, and he testified:

> COURT:      And then you put in this concrete floor in the summer of 2020 after the suit was filed. Why did you do that?
>
> THE WITNESS:      I did that, like I said, just to finish the building as far as to keep the construction of it up because it was not built with enough snow load, and the cement and more brace inside to hold the thing up and some more big, old trusses that support the roof and all this stuff. That's where it ended up just being to get it finished and have it actually hold up, that's where the cement come in and the foam, all this stuff to help hold it up – hold it together, basically. There's a engineering on it that gives it like a 22[-]pound snow load which for that area I think they recommended 150 pounds, so I'm sure one winter it would have just fell in. So that first year I just braced it all up and all that stuff and it stayed up, you know, and the next year I finished it, put the foam on it and the concrete.

11

COURT: Well, the winter of 2019 and 2020 you didn't lose any portion of the building due to structural failure, did you?

WITNESS: No. 2019 was the only year that it stayed up before the cement and the reinforcements that are in there now, but it was also supported off the ground with more beams and stuff like that. I could only use two bays of it, just the center, the rest of it was just holding it up until I could get it supported to hold itself up. They ended up coming back and putting another – two-by-sixes in there. It was spaced every two foot, now they're every one foot, and there's a big beam that supports it now, stuff that wasn't ever there before.

[¶38] Mr. Jerup's violation of the 100-foot setback was substantial, which weighs in favor of an injunction. However, the uncontroverted evidence concerning his decision to locate his outbuilding within the setbacks, and to continue construction after Mr. Winney's objection and lawsuit, does not reflect bad faith or an intentional disregard of the protective covenants. The lack of willfulness in his violations weighs against an injunction.[7]

## Mr. Winney's Delay in Objecting

[¶39] As we observed, the record does not support a laches defense. However, aside from laches, a delay in asserting one's rights is a relevant factor in weighing the equities of injunctive relief. 42 Am. Jur. 2d *Injunctions* § 15 (May 2023 update).

[¶40] The record shows that Mr. Jerup's outbuilding was framed by July 8, 2019, and Mr. Winney suspected the setback violations by mid-July. Mr. Winney did not notify Mr. Jerup of his objection until about a month later, on August 17. While this delay seems to indicate a puzzling lack of urgency, we do not give it much weight. One month is not so long that it belies Mr. Winney's asserted concern for his viewshed. Additionally, it is

---

[7] Mr. Winney contends that Mr. Jerup's testimony that he did not ask his permission knowing Mr. Winney would say no should weigh in favor of granting an injunction. Mr. Jerup also testified, however, that he did not ask Mr. Winney's permission because he did not think he needed it when he had permission from the neighbor affected by his encroachment. In reviewing the reasonableness of the district court's decision, "we consider the evidence in the light most favorable to the district court's decision, 'affording every favorable inference to the prevailing party[.]'" *Evans*, 2023 WY 55, ¶ 26, 530 P.3d at 307 (quoting *Bishop v. Bishop*, 2017 WY 130, ¶ 9, 404 P.3d 170, 176 (Wyo. 2017)). Viewed in that light, we must give weight to the entirety of Mr. Jerup's explanation. Given the parties' history, he no doubt believed Mr. Winney would not approve of his project, but it was also his understanding that Mr. Winney's permission was not necessary. We thus see no bad faith in his failure to seek Mr. Winney's permission.

apparent from Mr. Jerup's testimony that he felt he had a right to build on his chosen site because of his encroachment agreement with Clinton Cragg. There is no evidence to suggest that had Mr. Winney approached him earlier with his concerns, he would have ceased construction. Mr. Winney's delay therefore has little bearing on the equities of injunctive relief.

## Costs Versus Benefits of an Injunction

[¶41]  While the lack of harm to a plaintiff is not a bar to injunctive relief, it is a proper consideration in weighing the equities of an injunction when the cost of the injunction to the defendant is disproportionate to any benefit to the plaintiff. *See Crow III*, 2007 WY 177, ¶ 8, 170 P.3d at 120-21; *Keller*, 667 P.2d at 652; *Kleist v. Stern*, 133 N.Y.S.3d 159, 162 (N.Y. App. Div. 2020); *Bjork*, 936 N.E.2d at 772; *Honeycutt*, 996 So.2d at 560; *Wimberly*, 149 P.3d at 410; *Woodland Trails*, 656 S.W.2d at 921-22. As one court explained:

> Where the removal or destruction of a building is the object
> of an injunction, the courts will generally exercise caution in
> granting such relief, and will generally not do so unless there
> is a substantial benefit to be gained by the plaintiff.

*Sunrise Plaza Assocs., L.P. v. Int'l Summit Equities*, 733 N.Y.S.2d 443, 445 (N.Y. App. Div. 2001).

[¶42] Mr. Jerup testified he invested approximately $50,000 in his outbuilding. He further testified that there was no other place on his property that would accommodate the structure, and he could not afford to move it even if there were another location.

[¶43]  On the other side of the equation, Mr. Winney claims an injury to his viewshed. Specifically, he claims that when he "stands in his front yard facing east," and "turns left to look north, he should not see a 30 foot to 35 foot, 19[-]foot[-]tall building within 100 feet of [the] eastern boundary property line running north-south." The difficulty with Mr. Winney's claimed injury is that the evidence showed that if the outbuilding were removed, Mr. Jerup's road maintenance equipment would be exposed in that same location, which Mr. Winney found equally objectionable. Additionally, if the building were torn down, the evidence showed two additional structures on neighboring properties that would be within Mr. Winney's viewshed.

[¶44] Thus, if an injunction were issued to remove Mr. Jerup's outbuilding, that injunction would cost him his $50,000 investment, and the use of the building, while the benefit to Mr. Winney would be minimal. Mr. Winney acknowledges the harm to Mr. Jerup, but he contends we should disregard this imbalance because any harm to Mr. Jerup

13

was the result of his knowingly building within the required setbacks. Our precedent does not support such an approach.

[¶45]   Some jurisdictions will not consider the relative hardships of an injunction if the offending party knowingly violates a restriction. *See*, *e.g.*, *Carter v. Done*, 276 P.3d 1127, 1133 (Utah Ct. App. 2012); *Perel*, 594 S.E.2d at 905; *Seagrove Owners Ass'n v. Smith*, 834 P.2d 469, 471 (Or. Ct. App. 1992); *Bogardus v. Zinkevicz*, 596 A.2d 722, 724-25 (N.H. 1991). That has not been our approach.

[¶46]   For example, in *Keller*, the defendant knowingly built a fence and carport in violation of protective covenants. 667 P.2d at 651. The district court nonetheless denied an injunction to remove the carport, and we upheld that decision. *Id.* at 652. We observed: "The court disposed of this matter in a sensible way. It determined that the cost of constructing the carport and the cost of its removal outweighed the harm resulting to appellees." *Id.*

[¶47]   Similarly, in *Crow*, the district court found the defendants' violation "was deliberate, premeditated and egregious," but it denied an injunction requiring removal of the residential improvements based on a weighing of the equities, including the lack of benefit to be gained by their removal. *Crow III*, 2007 WY 177, ¶ 8, 170 P.3d at 120. We upheld the denial as a reasoned decision. *Id.* at ¶ 13, 170 P.3d at 122.

[¶48]   The fact that Mr. Jerup knowingly built within the 100-foot setback therefore does not preclude our consideration of the relative hardships of the requested injunction. And given the high cost of a mandatory injunction to Mr. Jerup and the minimal benefit to Mr. Winney, we must conclude this factor weighs against injunctive relief. When considered with the other factors, the district court's denial of Mr. Winney's request for injunctive relief was warranted by a weighing of the equities.

### *CONCLUSION*

[¶49]   The district court erred in denying injunctive relief based solely on Mr. Winney's delay and lack of injury. We affirm on the alternate basis that the equities did not support injunctive relief under these circumstances.

[¶50]   Affirmed.

14

**FENN, J., concurring in part and dissenting in part.**

[¶51]  I concur with the majority on the first two issues.  I agree the district court erred in denying Mr. Winney's request for an injunction on the grounds that it was untimely, and it erred in ruling Mr. Winney was required to prove an injury.  However, I respectfully dissent from the majority's position on the third issue, and I would find the district court should have issued the mandatory injunction.

[¶52]  The majority is correct that the issuance of a mandatory injunction depends on the equities between the parties, and it rests in the discretion of the district court. *See* 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions*, § 267 (Oct. 2023 Update).  A protective covenant will not be enforced if it is against public policy, if changes in the character of the neighborhood have resulted in the discharge of the covenant, or when a covenant has been abandoned. *Winney*, 2021 WY 128, ¶ 54, 499 P.3d at 268.  None of those circumstances are present in this case.

[¶53]  As the majority points out, in some cases "[w]here a great injury will be done to the defendant, with very little, if any, to the plaintiff, the courts will deny equitable relief." 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions*, § 267.  However, "[o]ne who willfully violates a building-line restriction may be compelled to move the building to comply with the established line, and he or she cannot complain of the expense which will thus be imposed." 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions*, § 268 (Oct. 2023 Update).

> The "relative-hardship" doctrine is a creature of equity, and it follows that seeking the invocation of the doctrine will require the possession of clean hands. Thus, the exercise of the equitable doctrine of comparative hardship to defeat the application of a restrictive covenant is appropriate only when the violation is committed innocently or mistakenly.

20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 263 (May 2023 Update); *see also City of Bowie v. Mie Props., Inc.*, 922 A.2d 509, 528 (Md. 2007) (citing *Easter v. Dundalk Holding Co.*, 86 A.2d 404, 405 (Md. 1952)) ("The exercise of [the comparative hardship] doctrine, however, is appropriate only when the violation is committed innocently or mistakenly and enforcement of the covenant would visit much greater harm on the violator compared to the slight amount of harm the beneficiary of the covenant would experience if the covenant was not enforced.").

[¶54]  Numerous other authorities have recognized that when a defendant's violation of the restrictive covenant was willful, the cost of removing the offending structure does not weigh against granting the mandatory injunction. *See* 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 268; *Ingle v. Stubbins*, 82 S.E.2d 388, 391 (N.C. 1954)

15

(citations omitted) ("In the case of one who deliberately violates a building restriction, a mandatory injunction to compel the modification of his building so as to comply with the restrictions cannot be avoided on the theory that the loss caused by it will be disproportionate to the good accomplished."); *Seagrove Owners Ass'n.*, 834 P.2d at 471 (finding a mandatory injunction should be issued to remove a garage where the harm was caused by a decision "to proceed in knowing violation of the restrictions"); *Hollingsworth v. Szczesiak*, 84 A.2d 816, 822 (Del. Ch. 1951) (citing *Tucker v. Howard*, 128 Mass. 361, 363 (1880); *Lee v. Hansberry*, 10 N.E.2d 406, 408–09 (Ill. App. 1937); *Morgan v. Veach*, 139 P.2d 976, 980–81 (Cal. App. 1943); *Nechman v. Supplee*, 210 N.W. 323, 325–26 (Mich. 1926)) ("[W]hen the defendant has gone on wrongfully in a willful invasion of another's rights relative to real property, the injured party is entitled to have the property restored to its original condition, even though the wrongdoer thereby would suffer great loss."); *Moore v. White*, 323 P.2d 352, 356 (Okla. 1958) (citing *Sterling Realty Co. v. Tredennick*, 64 N.E.2d 921 (Mass. 1946)) ("One who, with knowledge of building restrictions to which property is subject, has erected a building thereon which violated such restrictions, may properly be required by mandatory injunction to remove it."). Although a mandatory injunction is a drastic remedy and ought to be applied with caution, it "ought not to be withheld merely for the reason that it will cause pecuniary loss." *Stewart v. Finkelstone*, 92 N.E. 37, 40 (Mass. 1910).

[¶55] As discussed in the majority opinion, the district court incorrectly focused on Mr. Winney's delay in filing this action and the necessity of proving an injury. It did not consider whether Mr. Jerup's violation of the covenants was willful.[8] In other contexts we have recognized that willful means conduct that was done "purposely, with knowledge," or that was "of such a character as to evince a reckless disregard of consequences." *Shepherd of Valley Care Ctr. v. Fulmer*, 2012 WY 12, ¶ 21, 269 P.3d 432, 438 (Wyo. 2012) (quoting *Brebaugh v. Hales*, 788 P.2d 1128, 1136 (Wyo. 1990)). As the majority recognizes, it is generally proper for the district court to weigh the equities in the first instance. *Crow II*, 2006 WY 45, ¶¶ 16, 18, 131 P.3d at 994. However, because I find the facts demonstrate Mr. Jerup's actions were willful and the comparative hardship doctrine is inapplicable, I agree it is not necessary to remand this case to the district court to make specific findings regarding the balancing of the equities.

[¶56] Mr. Jerup's property is essentially located in a valley with no flat spots, and he knew at the time he purchased his property that the topography would make it difficult to build any structure without expensive dirt work to make the land level. He received a

---

[8] Mr. Winney never directly argued Mr. Jerup's actions were "willful." However, in his summary judgment motion he asserted Mr. Jerup acted with knowledge of the covenants because Mr. Jerup had sought strict enforcement of the covenants in the earlier suit. Further, in his proposed findings of fact and conclusions of law, Mr. Winney asked the district court to find the equities weighed in his favor because Mr. Jerup's violation of the covenants was knowing, and he continued with construction after learning of Mr. Winney's objection.

16

copy of the covenants when he purchased his land. He was aware of the 100-foot setback requirement and the 33-foot roadway easement. Although he knew about the setback agreement, he had heard from other people he might be able to circumvent the covenants by entering into encroachment agreements with adjoining landowners. He knew the location where he planned to construct his building violated the 100-foot setback. Although he entered into an encroachment agreement with the neighbor whose property is closest to his building, he did not seek permission or consent from Mr. Winney because he knew Mr. Winney would say no. He thought he had done everything he needed to comply with the law by getting the encroachment agreement and a building permit.

[¶57] If the evidence ended there, it might support a finding Mr. Jerup acted innocently or mistakenly,[9] but it does not. The evidence also shows that although Mr. Jerup received notice of Mr. Winney's objection to his building in August 2019, he continued construction. Mr. Jerup testified he kept going forward with the project because:

> [W]ell, I feel like I got a building permit, I got an encroachment agreement with the guy that I thought I would be, you know, encroaching on, I thought I did things right, and I had already paid a guy $15,000 to do this, it doesn't make sense to have him stop. Is that letter a bluff, is it -- I didn't know what to do honestly, so I just wanted to get the roof on it and **see what happened**. I didn't know what to do. I already invested all that money in it and it would be -- **I didn't want it sitting there like this for three years, you know, waiting to decide if it needs to be there or not.**

Emphasis added. Even after Mr. Winney filed suit, Mr. Jerup continued to make improvements to the building, taking the project from an initial investment of $15,000 to a total cost of more than $42,000. These improvements included changing the original plan by installing rollup doors instead of leaving the entire front of the building open. Mr. Jerup also finished the building, installed foam insulation, and poured a concrete floor after this suit had been filed.

[¶58] As argued by Mr. Winney in his brief, these facts show "[t]he prejudice to be suffered by [Mr.] Jerup from an injunction to remove his Building is, however, all self-inflicted." Mr. Jerup knew the district court might ultimately decide he did not have the

---

[9] "It is well settled that zoning ordinances cannot override, annul, abrogate, or relieve land from building restrictions or covenants placed upon them." *Wimer v. Cook*, 2016 WY 29, ¶ 26, 369 P.3d 210, 220 (Wyo. 2016) (quoting *Anderson v. Bommer*, 926 P.2d 959, 963 (Wyo. 1996)). Even if Mr. Jerup thought he was complying with county zoning and building requirements, it did not relieve him of his obligation to comply with the restrictive covenants.

right to place his building where he did, but he continued with the construction anyway, greatly increasing the total cost of the project.

> The defendant who pending the suit changes the existing condition, as by the erection of a building, does so at his own risk that the right may ultimately prove to be in the plaintiff. He cannot in such cases claim the advantage that the balance of injury might otherwise allow him, because he has acted with full notice of the other party's claim.

*Swaggerty v. Petersen*, 572 P.2d 1309, 1316 (Or. 1977) (quoting 5 Pomeroy's Equity Jurisprudence 4477 (2d ed 1919)).  Having continued construction when Mr. Jerup knew Mr. Winney objected to his violation of the covenants, "[h]e took his chances as to the effect of his conduct with eyes open to the results which might ensue." *Stewart*, 92 N.E. at 38.

[¶59] Courts in other jurisdictions have issued mandatory injunctions in similar situations. *Id.* (citing *Codman v. Bradley*, 87 N.E. 591, 594 (Mass. 1909); *Curtis Mfg. Co. v. Spencer Wire Co.*, 89 N.E. 534, 535–36 (Mass. 1909); *Downey v. Hood*, 89 N.E. 24, 25 (Mass. 1909)); *see also Ventresca v. Ventresca*, 126 A.2d 515, 518 (Pa. 1956) (citing *Hamilton v. Foster*, 116 A. 50, 53 (Pa. 1922); *Kanefsky v. Dratch Const. Co.*, 101 A.2d 923, 926–27 (Pa. 1954); *Weiss v. Greenberg*, 101 Pa. Super. 24, 30 (Pa. Super. 1930)) ("Where the defendant's act is tortious or in bad faith or where he intentionally takes a chance, injunctive relief should be granted."); *Hollingsworth*, 84 A.2d at 822 ("It has been found that with full knowledge of the restrictions they deliberately attempted to override them.  They took their chances as to the effect of their conduct with their eyes open to the results which might ensue.  They cannot therefore complain if they have suffered serious damage by reason thereof."); *Wimberly*, 149 P.3d at 410 (citing *Hollis v. Garwall, Inc.,* 945 P.2d 717, 720 (Wash. App. 1997)) (holding a defendant forfeits the benefit of balancing the relative hardships by proceeding with construction after receiving notice he was invading the property rights of his neighbors).

[¶60]  Mr. Jerup acted purposefully, with knowledge of the covenants and Mr. Winney's objection, and his actions evidence a reckless disregard for the consequences.  Thus, his actions were willful. *See Shepherd of the Valley Care Ctr.*, 2012 WY 12, ¶ 21, 269 P.3d at 438 (quoting *Brebaugh*, 788 P.2d at 1136).  Concerns about "considerable expenditures of money cannot shield premeditated efforts to evade or circumvent legal obligations from the salutary remedies of equity." *Stewart*, 92 N.E. at 38.  Because Mr. Jerup's actions were willful, the comparative hardship test does not apply, and he cannot complain about the cost of removing the building he never should have built.  The mandatory injunction should have been granted.